HARVARD STATE BANK, as Trustee, *et al.*, Plaintiffs-Appellants, v. THE COUNTY OF McHENRY, Defendant-Appellee.

Second District   No. 2—93—0058

Opinion filed September 27, 1993.

Thomas W. Schmitt, of Marengo, for appellants.

Gary W. Pack, State's Attorney, of Woodstock (James G. Militello III, Assistant State's Attorney, of counsel), for appellee.

JUSTICE McLAREN delivered the opinion of the court:

In February 1991, plaintiffs petitioned the County of McHenry for rezoning of their 64.5-acre property in unincorporated Coral Township, Illinois, from A-1 (agricultural) to E-1 (estates of one acre). A protest was filed by owners of adjacent properties. On June 18, 1991, the county board of McHenry, based on a finding by the McHenry County planning commission that the rezoning would be incompatible with surrounding land uses and inconsistent with McHenry County's general land-use plan, voted to deny plaintiffs' petition.

On July 10, 1992, plaintiffs filed a complaint for declaratory judgment and injunctive relief in the circuit court in McHenry County seeking to have the county's zoning restriction declared unconstitutional as applied to their property. Following a bench trial, the court entered judgment for the county. Plaintiffs then brought this appeal. Because we find the circuit court's ruling was not contrary to the manifest weight of evidence, we affirm.

Plaintiffs argue that the zoning ordinance as applied to their property is arbitrary, unreasonable and bears no substantial relation to the public health, safety, morals or welfare. The law governing the constitutionality of zoning ordinances is well settled in Illinois. (See *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40; *Wilson v. County of McHenry* (1981), 92 Ill. App. 3d 997.) A zoning ordinance is presumptively valid and will be held an unconstitutional exercise of police power only upon a showing that the ordinance bears no substantial relation to the general welfare. (*Smeja v. County of Boone* (1975), 34 Ill. App. 3d 628, 631.) The burden is on the party seeking the zoning change to show by clear and convincing evidence that the ordinance is unconstitutional. (*Exchange National Bank v. County of Cook* (1962), 25 Ill. 2d 434, 439-40.) On appeal, plaintiffs must demonstrate that the trial court's ruling was against the manifest weight of evidence. *Pioneer Trust & Savings Bank v. County of Cook* (1978), 71 Ill. 2d 510, 516-17.

When determining whether a zoning ordinance is valid, Illinois courts balance a variety of factors to determine whether the zoning restriction is fair to the owner of the subject property, owners of surrounding properties, and the public.

■ Among the factors considered when making this determination are six that have been summarized in *La Salle National Bank* and often repeated in later cases. These factors are: (1) the existing uses and zoning of nearby property; (2) the extent to which property values are diminished by particular zoning restrictions; (3) the extent to which the destruction of property values of plaintiffs' land promotes the health, safety, morals or general welfare of the public; (4) the relative gain to the public as compared to the hardship imposed upon the individual property owner; (5) the suitability of the subject property for the zoned purposes; and (6) the length of time the property has been vacant as zoned. (*La Salle National Bank*, 12 Ill. 2d at 46-47.) Two other factors often considered by Illinois courts include the community need for the use proposed by the plaintiff and the care with which the community has undertaken the planning of its development. (*Sinclair Pipe Line Co. v. Village of Richton Park* (1960), 19 Ill. 2d 370, 378.) Other cases state that determination of the highest and best use of a property is an important factor. See *Rams-Head Co. v. City of Des Plaines* (1956), 9 Ill. 2d 326, 331; *People ex rel. Alco Deree Co. v. City of Chicago* (1954), 2 Ill. 2d 350, 357-58.

No single factor is controlling (*La Salle National Bank*, 12 Ill. 2d at 47), and each case must be judged on its own facts (*Schmidt v. City of Berwyn* (1985), 134 Ill. App. 3d 36, 46). However, "[o]f paramount importance is the question of whether the subject property is zoned in conformity with surrounding existing uses and whether those uses are uniform and established." *La Grange State Bank v. County of Cook* (1979), 75 Ill. 2d 301, 309.

Plaintiffs admit that the dominant use and zoning of properties in the immediate vicinity of their parcel is agricultural. However, plaintiffs argue, the character of the area is changing and other uses, primarily residential, have appeared in the area in recent years. It is also apparent from zoning and use maps of the area offered at trial that significant residential development has appeared in the area. While the mere existence of nonconforming uses in an area zoned for a particular purpose does not void restrictions to other similarly situated properties, the existence of such nonconforming uses should be considered in evaluating the total character of the area in question. *La Salle National Bank v. City of Park Ridge* (1979), 74 Ill. App. 3d 647, 659.

Plaintiffs note in their brief there are seven parcels zoned for residential development within a two-mile radius of their land and that these developments include 190 platted residential lots, 117 with homes and 73 vacant. Maps introduced at trial disclose that plaintiffs' property is directly bounded on all sides by agricultural-zoned land that is either being farmed or is open space, designated as "natural areas." A small section of plaintiffs' land borders the east side of Harmony Hill Road, and the land directly across Harmony Hill Road to the west is also farmland. The closest residential subdivision to the plaintiffs' land is the Raven Hills development, 5 houses and 36 vacant lots zoned E-1 that face plaintiffs' land directly across Harmony Hill Road at the southwest diagonal corner.

Seven of the nine platted subdivision parcels within a two-mile radius of plaintiffs' land are located to the west of Harmony Hill Road. Only the two units of Marengo Ridge Estates, comprising 10 houses and 14 vacant lots, lie to the east of Harmony Hill Road. These units are about one mile north of plaintiffs' land on the west side of Harmony Hill Road and are surrounded by or border the Marengo Ridge Golf Course. The homes are zoned E-1 and R-1 (half-acre residences).

To the southwest of Harmony Hill Road and within two miles of plaintiffs' land are four subdivision units of Harmony Hills Estates. Ox Bow Woods lies about a mile to the northwest of plaintiffs' land and is comprised of 21 houses and 1 vacant lot in two units zoned E-3 (for three-acre estates). There is an E-5 (five-acre) parcel south of Harmony Hills Estates on the west side of Harmony Hill Road at Riley Harmony Road.

At trial, real estate developer and broker James Sarko testified for plaintiffs that the trend of development along Harmony Hill Road and the general area surrounding it is residential. Sarko sold the land in question to plaintiffs and manages it for them. Sarko's son, Roland F. Sarko, a land-use planner who designed the Raven Hills community, testified for plaintiffs that E-1 zoning would be consistent with existing uses because there are E-1 parcels in the immediate vicinity.

Defendant countered with testimony from Joseph Abel, a land-use planning consultant and former director of planning for Du Page County who conducted a site survey of the area surrounding plaintiffs' land. He concluded that a residential development on the site in question would pose a hardship to the agricultural community in the area by restricting use of heavy equipment and working hours because of noise, dust and inconvenience to residential neighbors. Abel said a new residential subdivision could set off a domino effect that would push farming out of the immediate vicinity. Abel also concluded

that the highest and best use of the property is agricultural. He defined highest and best use as "that use which effectively utilizes a parcel of land and at the same time—and this is very important—is in harmony with the growth goals and planning policies of the community."

An examination of the cases relied upon by the court in *La Salle National Bank v. County of Cook* in determining that current zoning and use should be a key factor to consider in zoning cases discloses that a restrictive zoning classification is most likely to be ruled invalid when an area in question has undergone a virtually complete change in character from its zoned purpose. (See *Krom v. City of Elmhurst* (1956), 8 Ill. 2d 104; *Langguth v. Village of Mount Prospect* (1955), 5 Ill. 2d 49.) In the present case, the area of plaintiffs' land has not undergone such a complete change in character despite the presence of nearby residential development. Thus the *La Salle* factor of current use and zoning of surrounding properties weighs in defendant's favor.

There was no dispute at trial that plaintiffs' property would have a higher value if rezoned E-1 than it has currently. Plaintiffs purchased the land in question in October 1978 for $226,000, or $3,500 per acre. Plaintiffs' witness James Sarko testified that the current market value of the land as zoned is $258,000, or $4,000 per acre. He said the parcel would be worth double that amount, or $516,000, if it were zoned E-1. In addition, he declared, if the property were developed with 35 lots as proposed, the market value of the parcel, after subtracting the cost of building homes, would be $572,000.

Although relevant, diminution in value is not alone a sufficient reason to invalidate a restrictive zoning classification. (*American National Bank & Trust Co. v. Village of Oak Lawn* (1979), 81 Ill. App. 3d 952, 960.) Land owners seeking to invalidate a zoning restriction must show that their economic loss is not necessitated by the public welfare. *Chicago Title & Trust Co. v. Village of Skokie* (1978), 60 Ill. App. 3d 221, 234.

Philip Giancola, one of the plaintiffs in the present matter, testified that when he and his associates purchased the land in question, they knew it was zoned for agriculture and paid what the land was worth as farmland, not as residential land. He also stated that he and his associates bought the parcel as an investment hoping to develop it some day. Defendant points out correctly that the loss suffered by plaintiffs because of the agriculture zoning is a loss of expectation and not an actual out-of-pocket loss. Indeed, plaintiffs' witness Richard Sarko testified that the parcel as zoned is currently worth $32,000 more than plaintiffs paid for it, even with its agricultural zoning.

Because plaintiffs purchased their land with full knowledge of its zoning, they "should not expect the loss in value from the proposed use compared to the current zoning to be persuasive." (*Glenview State Bank v. Village of Deerfield* (1991), 213 Ill. App. 3d 747, 762.) Of course, the mere fact that plaintiffs were aware of the zoning for their land does not preclude them from challenging its validity. *La Salle National Bank v. Village of Harwood Heights* (1971), 2 Ill. App. 3d 1040, 1047.

A major point of contention at trial was whether the parcel in question is prime farmland whose preservation is in the public interest. McHenry County's comprehensive land-use plan, adopted in November 1979, places a high priority on preserving prime farmland and declares that residential development should be channelled toward existing urban centers. The McHenry County land-use plan, year 2005 update (Update), which defendant introduced as an exhibit at trial, was approved by the county board in November 1985 and modified the 1979 plan. The Update contains the following:

> "—Prime farmland, beyond potential municipal service areas, is to be maintained.
>
> \*\*\*
>
> —Areas not suitable for farming (*i.e.* steep slopes, wooded areas, or less productive soil types) may be used for rural residential development when it will not negatively affect the surrounding agriculture use."

Thus, plaintiffs sought to characterize their land as not suitable for farming. Plaintiffs argued that their land contains no more than 30% prime farm soil. Defendant argued the land has 40% prime soil. The parties agreed that 45 of the 64.5 acres are tillable and that 13 acres are wetlands, completely unusable for farming.

Plaintiffs offered testimony from Jeffrey Grismer, who has farmed the land in question for about 10 years. He said he considered the property to be poor farmland. He estimated that the land has yielded an average of 120 bushels of corn per acre over the last 10 years and that his other farmland in the area has yielded an average of 145 bushels during the same period. Grismer said that he currently pays rent of $2,500 per year, or about $55 per tillable acre, for use of the parcel in question. He said that "average" farmland rents for about $80 to $90 per acre and "good" farmland rents for $100 to $115 per acre.

Defendant countered with testimony from David Brandt, a district conservationist with the United States Department of Agriculture Soils Conservation Service, that the average yield per acre of corn in

McHenry County is between 110 and 120 bushels. Defendant maintains in its brief that the low rent paid by Grismer for the parcel in question "must be examined with skepticism" because the rental on the parcel "dropped in contemplation of the instant lawsuit." Grismer testified that he paid $2,500 in rent for only the most recent year and had previously paid $3,000 per year since first farming the land 10 years ago.

In *Smeja v. County of Boone* (1975), 34 Ill. App. 3d 628, this court noted that preservation of farmland for the public good is not by itself a sufficient justification to prevent a zoning change for housing construction because "carried to its extreme [such a justification] would negate the development of rural property for residential purposes." (*Smeja*, 34 Ill. App. 3d at 632.) However, in *Wilson v. County of McHenry* (1981), 92 Ill. App. 3d 997, we declared that "[t]he adoption of a comprehensive plan which incorporates valid zoning goals increases the likelihood that the zoning of a particular parcel in conformity therewith is not arbitrary or unrelated to the public interest. The courts in Illinois have increasingly accorded importance to the existence of a comprehensive plan in reviewing zoning cases." (*Wilson*, 92 Ill. App. 3d at 1002.) McHenry County has such a comprehensive plan, and it declares that farming is an important basic component of the county's economy. Indeed, this case arises in the same county and under the same land-use plan as in *Wilson*, in which we rejected plaintiffs' claims (under facts similar to the present matter) that agricultural zoning was unconstitutional as applied to their land.

*Smeja*, *Wilson*, and a third case from the Appellate Court, Second District, *Pettee v. County of De Kalb* (1978), 60 Ill. App. 3d 304, all concerned attempts by property owners to have their agricultural land rezoned for residential use. Plaintiffs in *Smeja* and *Pettee* won their claims; plaintiffs in *Wilson* lost. For the following reasons, we believe that the present case is closer to the *Wilson* case.

In *Smeja*, we affirmed a trial court ruling invalidating agricultural zoning for a 50-acre parcel in Boone County. The evidence in *Smeja* showed that the parcel in question was virtually useless for farming. Fifteen acres of the parcel were considered submarginal for farming, and the remainder was a wooded area also unsuited to farming. It is also instructive to note that in *Smeja* there was significant support among county officials for the plaintiffs' zoning change to residential. The board of appeals of Boone County, the planning, zoning and building committee of the Boone County county board, and a majority of the full county board approved the rezoning petition. However, the petition failed because the county board vote of six to four in favor

fell short of the three-quarters approval required when a protest is filed by neighboring landowners, as it was in that case. "[F]or this reason only the request for rezoning was denied." *Smeja*, 34 Ill. App. 3d at 630.

In *Pettee*, we struck down a zoning restriction that was held valid by the trial court. The parcel in *Pettee* was an 80-acre tract in De Kalb County surrounded by farmland. Evidence at trial showed that the land was 20% wetlands and that the tract was not being farmed. A farmer testified that the land could not be profitably farmed because it was too small and had too much wetland. The trial court ruled that, based on evidence proffered by defendant, the land could be profitably farmed if $30,000 worth of drainage work were undertaken by the owner. This court reversed and held that the agricultural zoning was unconstitutional because the gain to the public from maintaining such marginal farmland was small in comparison to the hardship the plaintiff would suffer to make his land profitable for farming.

In *Wilson*, two cases were consolidated, both involving farmland in McHenry County whose owners wanted to develop the land for homes. We affirmed the trial court ruling that the agricultural zoning for both tracts was valid. One of the tracts was a 76-acre parcel in Greenwood Township that included 65 tillable acres. The county claimed the land was 87% prime farmland; plaintiffs claimed it was only 65% prime. Plaintiffs also offered evidence that the land was not profitable for farming. The second tract contained 130 tillable acres in a 176-acre tract in Coral Township, where the land in the present case is located. Plaintiffs claimed the land was barely making money from farming and that about 45% of the land was prime. The county rated 90% of the land as prime.

The parcel in the present matter is similar in character to those in *Wilson*. First, of course, there is the geographic closeness. This case and *Wilson* arose in McHenry County and were decided in light of McHenry County's land-use plan, which emphasizes maintenance of prime farmland. In addition, the parcels in *Smeja* and *Pettee* were not being used for their zoned purpose, farming, because the parcels in those cases were unsuited to their zoned purpose. In *Wilson* both parcels were being farmed, and we upheld the agricultural zoning in *Wilson* despite evidence that the farms were not profitable and a difference of opinion as to the true quality of the soil.

In the present matter, it was shown that only about 30% to 40% of the land was considered prime. However, mere percentages are not determinative. In *Wilson*, the 70-acre tract was considered at least 64% prime, but evidence showed that the land yielded an average of

just 95 bushels of corn per acre. The 176-acre tract in *Wilson* was rated at least 45% prime but yielded only 85 bushels of corn per acre. The land in the present case is considered only 30% to 40% prime, yet it has been more productive than either plot in *Wilson*. Plaintiffs' land has consistently yielded 120 bushels of corn per acre over 10 years, which puts it at the high end of the countywide average of 110 to 120 bushels.

Whatever its true percentage of prime soil, it is clear that the land in the present matter is productive and thus is suited to its zoned purpose. Also, it is important to note that soil quality is but one of many factors that must be considered in cases involving agricultural zoning. Each case must be determined on its unique set of factors. In the present matter, it was certainly not against the manifest weight of evidence for the trial court to find that the agricultural zoning for the land was valid, given the productivity of the land and the great importance McHenry County places on preservation of agricultural land.

Plaintiffs refer us to an unpublished memorandum opinion in the circuit court of McHenry County, First Bank of Oak Park v. County of McHenry (19th Jud. Cir. Feb. 28, 1986), No. 82—MR—23, which held unconstitutional an agricultural zoning restriction for a parcel of land across from the parcel in the present case. That decision allowed plaintiffs to secure E-1 zoning and develop what is now the Raven Hills development at the southwest edge of the land in the present matter. We note initially that a memorandum opinion of a trial court has no precedential force. See 134 Ill. 2d R. 23.

Additionally, the First Bank case is distinguishable from the present matter. In First Bank, the only evidence as to the quality of the soil was its soil map rating, which put the plot at 50% prime. There was also evidence that the land in First Bank was quite rocky and had a rolling terrain and wooded areas unsuited to farming. Perhaps most importantly, the First Bank land directly abuts another subdivision, Harmony Hills Estates, on the west side of Harmony Hill Road.

As to the question of the need in the area of the use proposed by the plaintiffs, there again was a difference of opinion. Plaintiffs' expert James Sarko testified that there was a need for residential lots in the area because many people would want to be located near the Northwest Tollway, which runs less than two miles south of the parcel in question. Defendant noted that there were already 73 vacant lots in the area. Plaintiffs claimed that their proposed development would offer more affordable housing than is presently available.

The judgment order in the present matter contained a specific finding that "it is not clear from the evidence" whether the proposed use would accommodate wells and septic systems, and it was also not clear that the proposed development would not deplete the area water table.

Plaintiffs offered the testimony of Bruce J. Houghtby, a certified professional soil classifier and soil scientist, who performed a soil survey of the property in question to determine its ability to handle a septic system. Houghtby was of the opinion that, based on his drilling of nine core samples at the site, the property was suitable for septic. Houghtby admitted that he would have to take about 55 more samples to meet McHenry County's specifications for new subdivisions. However, Houghtby was of the opinion that the additional samples would not change his findings that the overall tract was suitable for septic.

John Guillou, a hydraulics engineer, testified for defendant that the parcel was not suited to septic systems. Guillou based his findings on a survey of the land and review of the United States Soil Conservation Service map, but he conceded that he conducted no actual borings. He testified that he believed his findings would not change with a detailed investigation or actual samples.

As to water supply for the land, plaintiffs offered testimony of John M. Harkin, a professor of soil science at the University of Wisconsin, who declared that there was sufficient water to support the proposed development. Harkin took no site samples and admitted that he had "only scant knowledge of the hydrology of the area." However, based on data maps of the area, he was convinced there would be an ample supply of groundwater to serve the proposed development. Defendant's witness John Guillou testified that he did not believe it was possible to judge the availability of groundwater from just a review of data maps but that a test well would have to be drilled. Plaintiffs did not drill any such test wells. Without any test results, we determine the trial court findings in this regard are not against the manifest weight of the evidence.

The trial court also found that a road is a natural boundary between uses. This is relevant to determine whether it was arbitrary for McHenry County to deny a variance to plaintiffs when other owners had been granted such variances. The boundary in question is Harmony Hill Road, and evidence at trial showed that most of the platted residential development within a two-mile radius of the property in question lies to the west of the road. The property in question lies to the east. There are several individual residential lots located east of Harmony Hill, but all of

the platted subdivisions lie to the west of the road, except for Marengo Ridge Estates.

McHenry County has not actually zoned the area west of Harmony Hill Road for housing, but its general use plan notes that future development should be concentrated in areas that "fill in" between other developments. Thus, it appears that a residential district based on variances has been established directly west and south of the subject property. We note that zoning boundaries are by their nature somewhat arbitrary because they "must begin and end somewhere, and if the most that can be said is that the drawing of the line between permitted uses presents a fairly debatable question, the determination of the legislative body will be upheld." (*Hedrich v. Kane County* (1969), 117 Ill. App. 2d 169, 174.) The suitability of Harmony Hill Road as a boundary between agricultural and residential uses is a fairly debatable question.

Defendant cites *Glenview State Bank v. Village of Deerfield* (1991), 213 Ill. App. 3d 747, 761, for the proposition that streets are reasonable lines of demarcation between residential and other uses. This proposition derives from *Suhadolnik v. City of Springfield* (1989), 184 Ill. App. 3d 155, 175-76. While these cases did not involve rural or agricultural areas, we believe they apply in this case.

In *Krom v. City of Elmhurst* (1956), 8 Ill. 2d 104, the Illinois Supreme Court noted that "dividing lines of districts should be fixed in such a manner as to avoid making one side of a main artery of travel purely residential when the opposite side is already used as a business zone." (*Krom*, 8 Ill. 2d at 111.) However, the court added, "a main artery of travel may, in some instances, constitute so natural and proper a dividing line between commercial and residence zones as to cause the property on one side of the highway to take its character from the residential district it adjoins rather than the commercial zone it faces." (*Krom*, 8 Ill. 2d at 111.) The court in *Krom* made the distinction between cases involving zoning of busy intersections with extensive commercial development, which the court agreed should not be zoned so that one side is wholly residential and the other is commercial, and cases involving newer communities that are just beginning to fill in with homes and businesses, wherein it may be proper to allow one side to be residential and the other side commercial.

In making this distinction, the court in *Krom* compared *Mundelein Estates, Inc. v. Village of Mundelein* (1951), 409 Ill. 291, and *Forbes v. Hubbard* (1932), 348 Ill. 166, *overruled by La Salle National Bank v. City of Evanston* (1974), 57 Ill. 2d 415, 432-33. *Forbes* involved an attempt by the owner of a residential-zoned lot to have his land rezoned for commercial use. The parcel was located at the corner of Harlem Ave-

nue and Chicago Avenue in River Forest, a district that had a great deal of traffic and much commercial development already in place. Evidence showed that the parcel in question was unsuited to its continued use as a residential lot. *Mundelein Estates*, however, concerned an attempt by the owner of a residential-zoned lot to have his land rezoned for commercial use in an area that was not fully developed. At the time of the rezoning request, the Village of Mundelein had a large amount of undeveloped land, and officials zoned the town in such a way as to restrict residential development to one side of a street that included plaintiffs' land.

The underlying question in both cases, as in all zoning cases, was whether the continued residential zoning was unreasonable. In *Forbes* it was unreasonable; the residential zoning had outlived its usefulness because many commercial establishments had encroached and made the area unsuited for homes. In *Mundelein Estates*, the residential zoning was reasonable because no serious encroachment had occurred. The town was just beginning to grow, and the zoning lines served the useful purpose of directing that growth. The present matter is clearly more like the *Mundelein Estates* situation. McHenry County has undertaken an effort to direct its just-emerging growth, and that strategy is reasonable.

■ In summary, the trial court had ample basis for its ruling that plaintiffs failed to show by clear and convincing evidence that the zoning ordinance in question was invalid as applied to their land. There was a credible difference of opinion as to whether the agricultural zoning was of sufficient public interest to warrant depriving plaintiffs of the more lucrative residential zoning. We note again that "[w]here the most that can be said is that the reasonableness of the ordinance is fairly debatable, the decision of the municipal authorities must be upheld, and the trial court is not justified in substituting its judgment for that of the municipal authorities. *** [I]t is for the court to determine whether those differences [of opinion] are reasonable and justifiable." (*Schmidt v. City of Berwyn* (1985), 134 Ill. App. 3d 36, 46.) Here, the differences were reasonable and justifiable; thus, the trial court properly deferred to the judgment of the county board. The trial court's ruling certainly was not against the manifest weight of evidence, which is our standard of review on appeal.

The judgment of the circuit court of McHenry County is affirmed.

Affirmed.

WOODWARD and BOWMAN, JJ., concur.