FIRSTBANK COMPANY, Plaintiff-Appellee, v. THE CITY OF SPRING-FIELD, Defendant-Appellant.

Fourth District   No. 4—93—0180

Argued August 19, 1993.—Opinion filed November 30, 1993.

James K. Zerkle, Corporation Counsel, and Douglas T. Wilcox, Assistant Corporation Counsel (argued), both of Springfield, for appellant.

J. Patrick Joyce, Jr. (argued), of Brown, Hay & Stephens, of Springfield, for appellee.

JUSTICE COOK delivered the opinion of the court:

Defendant City of Springfield (City) appeals an order of the circuit court of Sangamon County finding an existing zoning ordinance invalid as applied to a tract of land owned by plaintiff Firstbank Company and finding use of the subject property as a mobile home park reasonable and appropriate. We affirm.

Plaintiff acquired this property in 1985 when the original developer failed. The property's 38 acres are divided into two tracts of land having a common address of 2801 Via Verde, Springfield, Illinois. Tract I is approximately 30 acres located within the corporate limits of Springfield and the northwest portion of the Lake Victoria Planned Unit Development (Lake Victoria PUD). Tract II is approximately eight acres located outside the corporate limits of Springfield and the Lake Victoria PUD.

The Lake Victoria PUD was initiated in 1977. The only zoning classification the City gives a PUD is PUD-1. Within this classification, a developer may, with the approval of the City, designate certain land uses, referred to as "worlds," for particular areas in the PUD. In each "world," particular uses for the property are enumerated. The properties are restricted to the uses set forth by the developer when the plan was approved, and in order to use a portion of a PUD for a use other than the use specified, an owner must petition the City for a use change.

At the time plaintiff acquired the 38 acres of property, it was undeveloped and used for agricultural purposes. Tract I had a general zoning classification of PUD-1. Approximately half of the property had been assigned particular "worlds," including household world, automotive and travel world, and leisure, recreation and civic world. While the remainder of tract I was initially zoned in the Lake Victoria PUD, it had no use designation because it had been reserved for a railroad reallocation program. Since tract II was outside the City limits and the Lake Victoria PUD, it had no use designation and was zoned by the county as R-1. Under Springfield zoning ordinances, upon annexation to the City, it would be zoned as R-2, a single-family residence district. Springfield, Ill., Code of Ordinances title 15, ch. 155, §155.015 (1990).

Immediately north of the property is an industrial area with an asphalt plant; to the northeast are some vacant lots and commercial businesses; farther east is a single-family residential development (Stratford Place subdivision); to the immediate east are some commercial offices with storage and small warehouse spaces; to the southeast are service-related businesses and office-financial businesses, a training facility for the developmentally handicapped, and the Mary Bryant home for the blind; farther east is a park, a lake, business offices and a multifamily residential development; to the immediate south is a campground and recreational vehicle and automotive sales; to the west is the Illinois Central Railroad right-of-way; and farther west are service-oriented businesses.

Under their present zoning classification, these two tracts of land could not be developed as a mobile home park, which Springfield classifies as R-6, mobile home and trailer park residential district. (Springfield, Ill., Code of Ordinances title 15, ch. 155, §155.021 (1990).) Plaintiff entered into an agreement to sell the 38 acres of real estate to Robert Barker at $7,000 per acre, contingent on the property being rezoned to an R-6 classification. Barker intended to develop the property into a mobile home park. Accordingly, in 1990, plaintiff petitioned the Springfield city council to reclassify the entire property (38 acres) as R-6. Plaintiff also filed a petition for the annexation of tract II, conditioned upon the granting of the zoning change.

On November 9, 1990, the Springfield and Sangamon County Regional Planning Commission (Planning Commission), an advisory board to the City, recommended that the subject property be zoned in accordance with plaintiff's request. Once the Planning Commission makes a recommendation, it goes to the Planning and Zoning Commission (Citizens Commission), a nine-member body of citizens appointed by the City. After conducting a hearing on the petition, the Citizens Commission voted, without giving any reasons, to recommend denial. The city council subsequently denied the zoning petition, and the petition to annex tract II was consequently withdrawn. Plaintiff then initiated this lawsuit seeking a declaratory judgment that the zoning ordinance was invalid and unconstitutional as it applied to the subject property, i.e., because (1) it denied plaintiff the right to use its property for the highest and best use, and (2) the proposed use as a mobile home park was reasonable. Plaintiff also requested that the court order the City to annex tract II and allow it to be used as a mobile home park. Summary judgment was granted in favor of defendant as to the eight acres of tract II; that question is not involved in this appeal.

The case then proceeded regarding tract I. Five witnesses testified at trial: four in favor of plaintiff's proposed use, and one against. After considering the evidence, the trial court found by clear and convincing evidence that the present zoning of the property in question was unreasonable and capricious, and use of the property as a mobile home park was reasonable and appropriate. In making this determination, the court considered the factors set forth in La Salle National Bank v. County of Cook (1957), 12 Ill. 2d 40, 145 N.E.2d 65. The court held the zoning ordinance was void as to the subject property, and plaintiff had the right to use the property as a mobile home park. This appeal followed.

A zoning ordinance is primarily a legislative function (*La Salle*, 12 Ill. 2d at 46, 145 N.E.2d at 68), and, once enacted, the ordinance carries a presumption of validity (*La Salle*, 12 Ill. 2d at 46, 145 N.E.2d at 69). A zoning ordinance may be valid in general but invalid as to a particular piece of property and a particular set of facts. (*Suhadolnik v. City of Springfield* (1989), 184 Ill. App. 3d 155, 165, 540 N.E.2d 895, 900; *St. Lucas Association v. City of Chicago* (1991), 212 Ill. App. 3d 817, 822, 571 N.E.2d 865, 868.) To overcome the presumption of validity, the party challenging the ordinance must show by clear and convincing evidence that the ordinance, as applied to the subject property, is arbitrary, unreasonable, and without substantial relation to the public health, welfare and safety. (*Cosmopolitan National Bank v. County of Cook* (1984), 103 Ill. 2d 302, 310, 469 N.E.2d 183, 187; *Tomasek v. City of Des Plaines* (1976), 64 Ill. 2d 172, 179-80, 354 N.E.2d 899, 903; *Glenview State Bank v. Village of Deerfield* (1991), 213 Ill. App. 3d 747, 759, 572 N.E.2d 399, 408; *Suhadolnik*, 184 Ill. App. 3d at 165, 540 N.E.2d at 900.) The trial court's finding as to the validity of a zoning ordinance will be overturned on appeal only if its findings are against the manifest weight of the evidence. *Cosmopolitan National Bank*, 103 Ill. 2d at 318, 469 N.E.2d at 191; *Rogers v. City of Jerseyville* (1990), 196 Ill. App. 3d 136, 142, 552 N.E.2d 1314, 1319.

■ There are several factors which courts consider in evaluating the validity of a zoning decision. These include (1) the existing uses and zoning of nearby property; (2) the extent to which property values are diminished by the particular zoning restrictions; (3) the extent to which the destruction of the value of plaintiff's property promotes the health, safety, morals, or general welfare of the public; (4) the relative gain to the public compared to the hardship imposed upon the individual property owner; (5) the suitability of the subject property for the zoned purposes; and (6) the length of time the property has been vacant as zoned, considered in the context of land developed in the vicinity. (*La Salle*, 12 Ill. 2d at 46-47, 145 N.E.2d at 69.) Two additional factors to consider include the community need for the proposed use and the care with which the community has undertaken to plan its land use development. *Sinclair Pipe Line Co. v. Village of Richton Park* (1960), 19 Ill. 2d 370, 378, 167 N.E.2d 406, 411.

Dave Kiliman, a city and regional planner for the Planning Commission, testified the proposed use was consistent with the City's comprehensive plan and was an appropriate use for the subject property. He was also of the opinion, based on the high occupancy rates of existing mobile home parks in the area, that Springfield needed more

mobile home parks, which would provide a less expensive housing option for the community. He further noted the existing uses designated for the property were viable uses and were also in conformance with the City's comprehensive plan. As to the surrounding commercial uses, he indicated these perhaps made the property less than desirable from a residential standpoint, but noted mobile home parks were often developed in an area that might not normally be developed for single-family homes.

Hubert J. Collins, a real estate consultant retained by plaintiff to dispose of the property it acquired in the development, testified the mobile home park would not be a detriment to surrounding properties, and he believed the "highest and best use" of the property, *i.e.*, the best return for the owner of the property without actually impairing the values of the surrounding property, would be as a mobile home park. He further testified the existing uses of the property were not viable, and if plaintiff were constrained to developing the property in accordance with its existing uses, he valued the property at $1,500 per acre.

Barker testified there was a need for a mobile home park in the part of the City where tract I was located and he believed the "highest and best use" of the property, *i.e.*, "that use which will yield the highest economic return to the owner," was a manufactured housing community. He also asserted the property could not be developed under the existing zoning classification, and he valued the land under its existing uses as $2,000 to $3,000 per acre. He estimated an increase in tax revenue for the City of approximately $50,000 to $60,000 per year if the proposed use were allowed, and indicated that if the court allowed its use as a mobile home park, he was still interested in buying it for $7,000 an acre.

L. Donald Luebbe, an expert in the field of urban planning and zoning, determined manufactured housing would be a good use for the land and doubted it would have an impact on surrounding land or devalue the homes in the single-family subdivision. In his opinion, the "highest and best use" of the property, which he defined as "the use providing the best economic return within a reasonable time and having no significant adverse impact on neighboring or nearby properties," was as a manufactured housing development, which he further asserted was compatible with the commercial uses of surrounding property. Moreover, he asserted the current zoning classifications within tract I were inappropriate.

The only witness to testify for the City was Richard Scherer, an urban planning consultant. Scherer had not testified before the Plan-

ning Commission, the Citizens Commission, or the city council, and was first contacted by the City in May 1993 to review this case. Scherer testified he did not believe the subject property was appropriate for residential use because of the presence of the railroad tracks and the noise accompanying the trains, as well as the asphalt plant and its fumes and noise. However, he did not testify that use as a mobile home park would be detrimental to the surrounding uses. Although Kiliman, the Planning Commission's planner, had testified the proposed use was consistent with the City's comprehensive plan, Scherer testified it was not. Scherer testified the plan designated the subject property for office/multiple-family uses. Scherer testified appropriate uses for the property would be heavy commercial uses.

Usually in zoning cases the governmental body is concerned that a particular use will be detrimental to surrounding uses, not to itself. Market forces, not governmental regulation, are what prevent developers from placing residential areas in locations where they will not be economically feasible. Of course a city has a legitimate interest in preventing residential development in areas where residents may be physically harmed, but there was no evidence of such a concern here. Although an asphalt plant is located immediately north of this property, a recreational vehicle campground is located to the immediate south, and a single-family subdivision is located not very far to the east. Finally, we do not understand how Scherer could testify that residential development was not in accord with the comprehensive plan when that plan called for multiple-family uses.

■ The supreme court has stated opinions will customarily differ in zoning cases, and this does not necessarily mean plaintiff has failed in its burden of proof. (*Duggan v. County of Cook* (1975), 60 Ill. 2d 107, 113, 324 N.E.2d 406, 409.) It has also stated differences of opinion do not render plaintiff's evidence unbelievable or require a finding that the reasonableness of the ordinance is debatable. (*La Salle*, 12 Ill. 2d at 47, 145 N.E.2d at 69.) Since there is naturally a conflict of testimony in cases of this nature, the supreme court has recognized that the credibility of witnesses is of great importance. Where there is conflict in testimony regarding the reasonableness of the ordinance, such conflicts go to the credibility of the witness and the weight to be accorded the testimony. These are matters which the trier of fact is in a superior position to resolve, and its findings will not be disturbed unless against the manifest weight of the evidence. *La Salle*, 12 Ill. 2d at 48, 145 N.E.2d at 70; *Van Duyne v. City of Crest Hill* (1985), 136 Ill. App. 3d 920, 924, 483 N.E.2d 1307, 1309.

■ Plaintiff presented evidence that the current zoning classification of the subject property resulted in a decrease in value to the property and did not bear a substantial relation to the public welfare. There was evidence to indicate the land could not be developed under its current zoning classifications, and the proposed use was in accord with existing uses of surrounding property. Further, as defendant conceded at oral argument, no evidence had been presented that the mobile homes would affect related areas. Plaintiff showed the proposed use was reasonable and was in accord with the City's comprehensive plan. Since there was evidence presented to support the court's finding that the existing classification bore no relation to the public welfare and the proposed use was reasonable, the court's ruling was not against the manifest weight of the evidence. Accordingly, we affirm the court's ruling.

Affirmed.

STEIGMANN, P.J., and LUND, J., concur.