NORMAN M. ZEITZ *et al.*, Plaintiffs-Counterdefendants-Appellants, v. THE VILLAGE OF GLENVIEW *et al.*, Defendants-Appellees (Edward S. Busche *et al.*, Defendants and Counterplaintiffs-Appellees).

First District (1st Division) No. 1—97—4323

Opinion filed April 5, 1999.—Rehearing denied May 28, 1999.

James P. Pieczonka, of Chicago, for appellants.

James S. Gordon and Don E. Glickman, both of Gordon, Glickman & Flesh, of Chicago, for appellees Village of Glenview *et al.*

Richard T. Wimmer and Lance C. Malina, both of Klein, Thorpe & Jenkins, Ltd., of Chicago, for other appellees.

JUSTICE TULLY delivered the opinion of the court:

Plaintiffs, Norman M. Zeitz, Helen Zeitz, Norman D. Zeitz, Richard M. Zeitz and Lakewoods Development Corporation, brought an action seeking declaratory and injunctive relief from zoning ordinances enacted by defendant, Village of Glenview. The remaining defendants were neighboring property owners who were the beneficiaries of restrictive covenants that limited development on the Zeitzes' property. Plaintiffs sought to have Glenview's rezoning of 10 acres of land declared invalid and alleged damages for inverse condemnation and improper taking of the Zeitzes' property. After the trial court dismissed plaintiffs' action, we remanded the case for trial in *Zeitz v. Village of Glenview*, 227 Ill. App. 3d 891, 592 N.E.2d 384 (1992) (*Zeitz I*). Following a bench trial, the trial court entered judgment in favor of defendants. Plaintiffs appeal the judgment, and this court has jurisdiction pursuant to Supreme Court Rule 301 (155 Ill. 2d R. 301).

For the reasons that follow, we affirm.

Plaintiffs presented a development plan to Glenview to build 10 homes on the 10-acre property. Glenview later rezoned the property to limit the number of homes allowed on the property to five. *Zeitz I* set forth the facts in this case before we remanded it for trial and we need not repeat them here. We will address the additional facts that are relevant to this appeal. The following evidence was presented at trial.

I. Plaintiffs' Evidence

Norman M. Zeitz bought the property in separate parts between 1961 and 1966. Since then, he had received several offers to buy the property, one of which was for $1.6 million. Zeitz rejected that offer. In 1989, Lakewoods paid him $25,000 for an option contract to buy the property. After signing the option contract, Zeitz paid $4,000 for the preparation of an environmental plan for the property. The option was extended 10 times.

Steven Balek, an attorney, licensed real estate broker and one of the Lakewoods principals, negotiated the option agreement with Norman M. Zeitz. When Balek signed the option agreement, he knew about the Illinois Supreme Court doctrine which stated that there is no vested right in the continuation of a zoning ordinance. Before signing the agreement, he reviewed Glenview's ordinances and zoning map, and was aware that the Zeitzes' property was entirely within the environmentally sensitive area (ESA) and partially within the primary area (PA). Balek met with Glenview officials after signing the option agreement. He knew that the village board of trustees would ultimately decide whether any subdivision plan Lakewoods submitted would be approved. Balek also knew that any subdivision plan would

have to be submitted to the village plan commission (Commission) before going to the Board. Lakewoods presented its plan to the Commission. Balek attended the hearings on the ordinance which placed a moratorium on subdivision applications and approvals. He knew that the Zeitzes' property would be covered by the moratorium and that Glenview was considering whether to rezone the property to the R-E classification. Before the moratorium ordinance was passed, Lakewoods spent over $9,000 on its proposed development.

James Pieczonka, a lawyer and real estate broker, and Balek optioned the Zeitzes' property on Lakewoods' behalf, based on the fact that it was zoned R-1 (one-acre minimum lot size). In 1993, under the fourth extension of the option agreement, Lakewoods had the option to buy the property for $1.923 million. At the same time, Pieczonka's real estate company listed the property for sale under the R-E (two-acre minimum lot size) zoning classification for $1.8 million. Lakewoods was not obligated to buy the property under the option agreement.

Thompson Dyke, a private planning consultant and landscape architect, testified that it was not significant that the ESA ordinance did not have a legal description of the ESA. The map of the ESA, attached to the ordinance, provided adequate notice of the area covered by the ESA. In addition, the fact that the PA covered part of the Zeitzes' property was "like a red flag;" giving notice to anyone planning a development on the property. The Grove's[1] location near the property was also a warning sign that extra care and environmental sensitivity were required in preparing a development plan.

According to Theodore Kowalski, a real estate appraiser, the value of the Zeitzes' property, if developed with 10 lots under the R-1 zoning, was $1.9 million. If zoned R-E, with a minimum lot size of two acres, the value was $1.2 million.

II. Defendants' Evidence

Jacques Gourguechon, an urban planner and landscape architect, testified that the "overall sphere of influence" on the property was the ESA, and that the Grove and open space controlled by the Glenview park district were the predominant land uses in the ESA. Gourguechon described the ESA as an "overlay zone," which is a set of regulations overlaid on the basic zoning classification, such as R-1 or R-E, to cover specific unique attributes of the area. According to Gourguechon, Glenview implemented a sophisticated and comprehensive land

---

[1]The Grove is an 82-acre property in Glenview and is a national historic landmark.

management system to protect the Grove from high levels of urban development. In his opinion, plaintiffs' 10-lot 10-home development would have had a detrimental impact on the area.

Thomas Slowinski, an environmental scientist, conducted a wetlands delineation for the Zeitzes' property. He concluded that there were three wetland areas covering 1.61 acres on the 10-acre property. Plaintiffs' proposed development would have harmed the wetlands due to filling and grading the land, constructing roads, and changing their natural hydrology. In addition, Slowinski testified that plaintiffs' proposed development would have been subject to the Army Corps of Engineers' jurisdiction, and it would not have met the criteria for an Army Corps of Engineers permit.

Mary Bak, the director of development for Glenview, testified that the village did not promise Lakewoods approval of its 10-home development plan. Glenview requested more information on the development plan at its plan commission meeting but did not vote on the plan. The village board approved the moratorium approximately six weeks later.

Defendants also presented several witnesses who testified that the 10-lot 10-home plan was detrimental to the property. In addition, they testified that the "highest and best use" for the property was for one-home per each two-acre lot.

III. Trial Court's Findings of Fact, Memorandum of Law and Order

The trial court heard the testimony, made its credibility determinations, and set forth the following findings of fact and conclusions of law. The Zeitzes' property was densely forested, vacant and zoned R-E for two-acre minimum lot sizes. Since about 1989, the Glenview zoning map has showed that the entire property was included in an ESA and that some of it was within a PA, which indicated increased environmental sensitivity. The ESA was an "overlay zoning classification" which applied development restrictions in addition to those imposed by the underlying zoning classifications. The court found the testimony of defendants' experts about the value of the property to be credible and found that plaintiffs suffered "no significant diminution in property values as a result of rezoning of the property from the R-1 to the R-E zoning classification." Moreover, the court found that plaintiffs were not deprived of an economically viable use of the property.

Before it signed the option agreement to buy the Zeitzes' property, Lakewoods knew that the property was within the ESA and partially within the PA. Even though the ESA ordinance did not contain a legal description of its boundaries, Glenview's zoning map and the map at-

tached to the ordinance gave plaintiffs adequate notice of the ESA's relation to the property. Therefore, "neither Lakewoods nor Zeitz had a good reason to believe that there was a probability that the proposed [10-]lot subdivision would be approved." Lakewoods knew that it had no vested right to a continuation of existing zonings and the [Glenview] officials did not give any assurance to Lakewoods that its proposed subdivision would be approved.

In addition, the court found that the Grove was "a public resource of great ecological, historical and cultural significance and would be adversely impacted by plaintiffs' proposed subdivision." In particular, the proposed subdivision would harm the wetlands on and off the Zeitzes' property. The court found defendants' experts on the issue to be credible. Although there were other developments on the fringes of the ESA, they were consistent with Glenview's efforts to protect the Grove. Those developments were on property which was formerly agricultural or on main thoroughfares, and they mostly predated the ESA ordinance.

The court also found that even under the R-1 zoning classification, the Zeitzes' property was not large enough for 10 1-acre lots, unless the area of Portage Run Road was included within the lots. Glenview had never before allowed such an inclusion to meet minimum lot sizes, and plaintiffs' subdivision plan was not reasonable. Again, the court found defendants' experts on the issue to be credible.

In its memorandum of law, the trial court applied the factors for reviewing a zoning ordinance set forth in *La Salle National Bank v. County of Cook,* 12 Ill. 2d 40, 145 N.E.2d 65 (1957), and *Sinclair Pipe Line Co. v. Village of Richton Park,* 19 Ill. 2d 370, 167 N.E.2d 406 (1960). The court concluded that plaintiffs did not show by clear and convincing evidence that Glenview's two-acre zoning classification of the Zeitzes' property was arbitrary and capricious. In addition, the court rejected plaintiffs' estoppel claim, noting the general rule that there is no vested right in the continuation of a zoning ordinance. The court also pointed out that Lakewoods' officers admitted that, before they acquired the option to buy the Zeitzes' property, they knew that the ESA and PA existed and affected the property. Finally, the court rejected plaintiffs' claim of an unconstitutional taking. There was no evidence in the record that Glenview's six-month moratorium was defective and there was no proof that the rezoning deprived plaintiffs of viable economic uses for the property.

The relevant issues on appeal are whether (1) Glenview's ESA applied to the Zeitzes' property; (2) plaintiffs had a vested right to proceed under the R-1 zoning classification and whether Glenview was estopped from applying the R-E zoning classification to the Zeitzes'

property; (3) the R-E zoning ordinance was valid; and (4) there was an unconstitutional taking or inverse condemnation of the Zeitzes' property.

■ The issues on appeal present us with mixed questions of fact and law. We will not disturb the trial court's factual findings unless they were against the manifest weight of the evidence. See *Pioneer Trust & Savings Bank v. County of Cook*, 71 Ill. 2d 510, 377 N.E.2d 21 (1978). Furthermore, credibility determinations are the province of the trial court. *Harris Bank v. County of Kendall*, 253 Ill. App. 3d 708, 625 N.E.2d 845 (1993). In reviewing the trial court's conclusions of law, we apply the *de novo* standard of review. *State Farm Insurance Co. v. Kazakova*, 299 Ill. App. 3d 1028 (1998). "Therefore, where a mixed question of fact and law is presented, the applicable standard of review should be 'between a manifest weight of the evidence standard and a *de novo* standard so as to provide some deference' " to the trial court. *Chicago Transit Authority v. Amalgamated Transit Union, Local 241*, 299 Ill. App. 3d 934, 941, 702 N.E.2d 284, 289 (1998), quoting *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205, 692 N.E.2d 295, 302 (1998). "Our supreme court has held that for such a mixed question of fact and law a clearly erroneous standard of review is appropriate." *Chicago Transit Authority*, 299 Ill. App. 3d at 941, 702 N.E.2d at 289, citing *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 692 N.E.2d 295 (1998).

■ "[T]he Illinois Constitution authorizes home rule units of government to adopt and enforce zoning ordinances." *Village of Tinley Park v. Ray*, 299 Ill. App. 3d 177, 178, 700 N.E.2d 705, 706 (1998). Glenview is a home rule unit. *Village of Glenview v. Ramaker*, 282 Ill. App. 3d 368, 668 N.E.2d 106 (1996). Article VII, section 6(a), of the Illinois Constitution of 1970 provides:

"Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare." Ill. Const. 1970, art. VII, § 6(a).

Moreover:

" 'This court cannot handle matters which in effect are attempts to overrule decisions of a legislative body based upon alleged failure to follow requirements imposed by that body itself. *** We have authority to invalidate legislation adopted by the city council only upon grounds that the enactment violates a provision of the Federal or State constitution or violates the mandate of a State or Federal statute.' " *Landmarks Preservation Council v. City of Chicago*, 125 Ill. 2d 164, 179, 531 N.E.2d 9, 15 (1988), quoting *Chirikos v. Yellow Cab Co.*, 87 Ill. App. 3d 569, 574 (1980).

Plaintiffs contend on appeal that the ESA did not apply to their property. Specifically, plaintiffs argue:

"Glenview has not lawfully applied the ESA designation to [p]laintiffs' property or any property within the purported ESA as required by Ordinance 2280 *** or its amendment Ord[inance] 3078 *** and the public notice and hearing requirements pursuant to law. Designation by ordinance of the ESA after findings of environmental significance is required by Ord[inance] 2280 and is the underlying basis for application of the ESA regulations ***. To date, no specific ordinance has been enacted by Glenview that has made findings of environmental significance as to the Zeitz property to designate it as an ESA [a]rea or within an ESA. Accordingly, all ordinances subsequent to Ord[inance] 2280 are invalid as to [p]laintiffs['] property."

Plaintiffs characterize ordinance 2280 as an "enabling ordinance" which itself did not designate any property as being within an ESA.

■ We disagree with plaintiffs for several reasons. Our review of the record shows that the trial court's findings were not clearly erroneous. Ordinance 2280 stated that a public hearing was held on September 25, 1979, and that the Glenview authorities found "it in the public interest *** to provide for the protection of areas of environmental significance." Section 12D.1 of ordinance 2280 designated the ESA and PA in question and incorporated a map in which they were delineated: "Environmentally Significant Areas and Primary Areas are shown on a map of Environmentally Significant Areas in the Village of Glenview dated September 25, 1979." In addition, as the trial court found, even though there was no legal description of the ESA and PA, plaintiffs knew about them at the time the Zeitzes and Lakewoods signed the option agreement. Furthermore, plaintiffs' argument that the ESA was invalid because Glenview did not conduct a separate proceeding for designating the ESA fails. We will not disturb Glenview's ordinance because of its alleged failure to follow its self-imposed requirements. See *Landmarks Preservation Council*, 125 Ill. 2d 164, 531 N.E.2d 9.

■■ Plaintiffs also contend that they had a vested right to proceed under the R-1 zoning classification and that Glenview was estopped from applying the R-E zoning classification to their property. No party has a vested right in the continuation of a zoning ordinance. *Citizens Bank & Trust Co. v. City of Park Ridge*, 5 Ill. App. 3d 77, 282 N.E.2d 751 (1972). Although the equitable estoppel doctrine is applicable to municipal corporations, courts do not favor its use against a public body. *La Salle National Trust, N.A. v. Village of Westmont*, 264 Ill. App. 3d 43, 636 N.E.2d 1157 (1994). When invoked against a

governmental entity exercising its governmental functions, estoppel will only apply in extraordinary or compelling circumstances. *Tim Thompson, Inc. v. Village of Hinsdale*, 247 Ill. App. 3d 863, 617 N.E.2d 1227 (1993). In order to invoke the estoppel doctrine against a municipality, a landowner "must establish (1) an affirmative act on the part of the municipality; (2) that the affirmative act induced the complained-of action; and (3) that it substantially changed its position as a result of its *justifiable reliance*." (Emphasis in original.) *Tim Thompson, Inc.*, 247 Ill. App. 3d at 878-79, 617 N.E.2d at 1238-39.

In this case, our review of the record shows that plaintiffs failed to demonstrate that they had a vested right in the continuation of the R-1 zoning ordinance. Furthermore, plaintiffs did not satisfy the criteria for invoking the estoppel doctrine against Glenview. Plaintiffs knew that the ESA and PA existed and that they applied to their property. In addition, plaintiffs knew that any development within the ESA required the submission of plans to Glenview's plan commission, that an environmental assessment or plan might have been required, and that Glenview prohibited any change in the natural drainage of the property. Plaintiffs, however, did not submit a plan which met the minimum lot size requirements or addressed the environmental concerns of the property. In fact, the plan did not delineate the wetlands on the property and proposed changes to the property's natural drainage. Given the foregoing, plaintiffs failed to show a probability that Glenview would have approved their plan. Moreover, even assuming there was a probability that Glenview would have approved the plan, plaintiffs failed to show that they incurred a substantial change in position through any justifiable reliance on any such probability. The evidence showed that Norman M. Zeitz received the $25,000 option fee from Lakewoods and then spent $4,000 on an engineering study. Lakewoods spent, in addition to the option fee, about $9,000 on the proposed development until the moratorium ordinance was passed. We agree with defendants' argument that those sums, in relation to the property's value of more than $1 million, fail to establish detrimental justifiable reliance.

Plaintiffs also contend that the R-E zoning ordinance was invalid. A zoning ordinance, as a legislative judgment, is presumptively valid. *Glenview State Bank v. Village of Deerfield*, 213 Ill. App. 3d 747, 572 N.E.2d 399 (1991). A party who challenges an ordinance must first establish that it is invalid and then show that the proposed use for the subject property is reasonable. *Glenview State Bank*, 213 Ill. App. 3d 747, 572 N.E.2d 399. *La Salle National Bank* set forth the following factors to be used in determining whether an ordinance is valid: (1) the existing uses and zoning of nearby property; (2) the

extent to which property values are diminished by the particular zoning restrictions; (3) the extent to which the destruction of the value of the plaintiff's property promotes the health, safety, morals, or general welfare of the public; (4) the relative gain to the public compared to hardship imposed upon the individual property owner; (5) the suitability of the subject property for the zoned purposes; and (6) the length of time the property has been vacant as zoned, considered in the context of land development in the vicinity. *La Salle National Bank*, 12 Ill. 2d 40, 145 N.E.2d 65. *Sinclair Pipe Line Co.* provided two additional factors: the community's need for the proposed use and the care with which the community had undertaken to plan its land use development. *Sinclair Pipe Line Co.*, 19 Ill. 2d 370, 167 N.E.2d 406. In contesting an ordinance's validity, a plaintiff must establish by clear and convincing evidence that the ordinance as applied to the property in question is arbitrary, unreasonable and without any substantial relation to the health, safety, comfort, morals or general welfare of the public. *La Salle National Bank*, 12 Ill. 2d 40, 145 N.E.2d 65.

■ Our review of the record shows that the trial court was not clearly erroneous in finding that plaintiffs failed to establish by clear and convincing evidence that the R-E zoning classification was arbitrary and capricious. We will examine each of the *La Salle National Bank* and *Sinclair Pipe Line Co.* factors.

A primary concern is whether the property in question was zoned in conformity with surrounding uses and whether those uses were uniform and established. *La Grange State Bank v. County of Cook*, 75 Ill. 2d 301, 388 N.E.2d 388 (1979). In determining whether surrounding uses and zonings weigh in favor of or against current zonings, the character of the area is of central concern. See *Glenview State Bank*, 213 Ill. App. 3d 747, 572 N.E.2d 399. In this case, plaintiffs' and defendants' experts testified that the Zeitzes' property drew its character mostly from the Portage Run Road area. Eight of the nine homes on Portage Run Road were on lots two acres or larger and were all zoned R-E. Two other properties in the immediate vicinity exceeded the two-acre minimum lot size and were zoned R-E. There was a water tower on a one-third acre lot near the property, but no one testified that it affected the property's character. The ESA was the larger area of influence and was zoned as a public land district (P-1). The P-1 zoning applied to the Grove. The ESA's dominant land use was open space. Along the edges of the ESA were offices on and a subdivision of single-family, one-fourth-acre lots built in the 1960s. The offices and subdivision were not visible from the Zeitzes' property. According to plaintiffs, the trial court's view of the surrounding uses and zones was too narrow, and it failed to consider Lake Street to the north, the

nearby Mormon temple, and Kennicott Lane. The uses and zonings for those locations were inconsistent with an R-E zoning. The record shows that the court did not err in giving minimal weight to those inconsistencies. *Cf. Harvard State Bank v. County of McHenry*, 251 Ill. App. 3d 84, 86, 620 N.E.2d 1360, 1362 (1993) ("While the mere existence of nonconforming uses in an area zoned for a particular purpose does not void restrictions to other similarly situated properties, the existence of such nonconforming uses should be considered in evaluating the total character of the area in question").

The second *La Salle* factor is the extent to which property values were diminished by a particular zoning restriction. Proof of even a large difference in property value under two different zoning classifications is insufficient by itself to overcome the presumption of a zoning ordinance's validity. *Oliver Construction Co. v. Village of Villa Park*, 257 Ill. App. 3d 750, 629 N.E.2d 199 (1994). The fact that a property may be more valuable if rezoned is not sufficient to invalidate a zoning ordinance. *Kellett v. County of Du Page*, 89 Ill. App. 2d 437, 231 N.E. 706 (1967). The record supports the trial court's conclusion that plaintiffs' property values suffered no significant diminution. Defendants' qualified appraiser witness, William McCann, whom the trial court found credible, testified that there was almost no change in the value of the Zeitzes' property as a result of the rezoning. According to McCann, the property's value, whether zoned R-1 or R-E, was $1 million in 1989, and $1.2 million in 1995. The trial court did not find plaintiffs' qualified appraiser, Theodore Kowalski, to be credible. Kowalski testified that the property's value, as zoned R-1 in 1989, was $1.9 million, if 10 homes could be built. Under R-E zoning, he appraised the property at $1.2 million in 1989.

Courts often consider the third and fourth *La Salle* factors together. *Oliver Construction Co.*, 257 Ill. App. 3d 750, 629 N.E.2d 199. Even assuming that the value of the Zeitzes' property was diminished, the record supports the trial court's conclusion that the promotion of the health, safety, morals and general welfare of the public and the relative gain to the public outweighed any hardship to plaintiffs. The trial court found to be credible several expert witnesses' testimony that a 10-home, single-family development on the property would have harmed the Grove. The evidence showed that all of the property within the ESA, including the Zeitzes' property, was within the same ecological system, and that the savanna, prairies, and wetlands in the area were rare. It also showed that the proposed 10-home development would have harmed those areas.

Under the fifth *La Salle* factor, the trial court found that the

Zeitzes' property was suitable for zoning under the R-E zoning classification. The trial court found as follows:

"Mr. Gourguechon and Mr. McCann testified that five homes on two-acre lots on the subject site would be developable and marketable. William Doland, plaintiffs' surveyor and engineer, and Christopher Burke, plaintiffs' hydrologist, agreed that a plan could be developed for five single family homes. Further, plaintiffs' appraiser, Theodore Kowalski, testified that the value of the property, as zoned R-E, was $1.2 million *** and each individual lot would be worth $240,000, an *implicit recognition that the property was suitable for development under R-E.*

While Dyke testified that he did not believe that the property would develop under the R-E classification because it was 'over-regulated,' and while Pieczonka claimed that a two-acre lot under the R-E classification was worth less than an R-1 one-acre lot, their testimony is incredible. Not only is it contradicted by Kowalski's opinion of value but the property is located near [eight] homes on two-acres [*sic*] or greater, and no one suggested that they are unmarketable." (Emphasis in original).

Our review of the record does not show that the trial court's findings were clearly erroneous. Plaintiffs contend that the R-E zoning does not promote "needed improvements" to the area such as sewers, water access, and wider roads. Even if true, plaintiffs' argument does not prove that the R-E classification is unsuitable, especially in light of the relevant expert testimony, which the trial court found to be credible. *Cf. Cech Builders, Inc. v. Village of Westmont*, 118 Ill. App. 3d 828, 455 N.E.2d 817 (1983) (when there is room for a legitimate difference of opinion concerning the reasonableness of an ordinance or when the question of reasonableness is fairly debatable, the courts will not interfere with the legislative judgment).

The final *La Salle* factor is the length of time the Zeitzes' property was vacant as zoned, considered in the context of land development in the vicinity. "[T]o successfully challenge a zoning ordinance a plaintiff must show that the subject property is unsalable or vacant '*because of* the zoning classification.'" (Emphasis in original.) *State Bank v. City of Chicago*, 287 Ill. App. 3d 904, 916, 679 N.E.2d 435 (1997), quoting *Firstbank Co. v. City of Springfield*, 253 Ill. App. 3d 844, 849, 625 N.E.2d 804 (1993). The evidence showed that before 1983, the front part of the Zeitzes' property was zoned for commercial use and the back part was zoned for one-acre single-family homes. Norman M. Zeitz bought the back part of the property in 1966. Those five acres were annexed to Glenview in 1983 and were zoned R-1. Despite the R-1 zoning, Zeitz rejected offers between 1983 and 1989 to purchase the property for $1.5 or $1.6 million. After the property was rezoned

R-E in 1990, Zeitz received and rejected a letter of intent to buy the property for $1 million. Based on these facts, the trial court found that there was no evidence that the R-E zoning caused the property to remain vacant. Our review of the record does not reveal the trial court's finding to be clearly erroneous; plaintiffs had opportunities to develop the property, but chose not to do so.

We next address the two factors set forth in *Sinclair Pipe Line Co.* First is the community's need for the proposed use of the property. Plaintiffs presented no substantial evidence of such a need, and the trial court did not err in giving no weight to this factor. The second *Sinclair Pipe Line Co.* factor is the care with which the community had undertaken to plan its land use development. The trial court thoroughly explained its reasoning on this issue, finding "an extraordinary effort by Glenview to create a careful land use plan for the area." In 1979, Glenview passed ordinance No. 2280, which created the ESA and PA. The ordinance's purpose was to protect the sensitive biological balance of the area. In 1988, Glenview retained consultants to prepare a new comprehensive plan. That plan was still being considered when plaintiffs submitted their proposed plan in April 1989. The development moratorium was passed under ordinance No. 3010 in July 1989. Subsequently, Glenview commissioned an environmental report concerning the Grove, which recommended the R-E zoning classification. As the trial court found, the evidence shows that Glenview exercised much care in protecting the environment surrounding the Grove. The fact that office buildings, homes on $1^{1}/_{2}$ acres, and a Mormon temple existed nearby does not change the analysis. As the trial court stated, "the mistakes of the past do not justify destruction of the remainder of the historic Grove."[2]

The trial court was not clearly erroneous in finding that plaintiffs failed to establish by clear and convincing evidence that the R-E zoning ordinance as applied to the property was arbitrary, unreasonable and without any substantial relation to the health, safety, comfort, morals or general welfare of the public. See *La Salle National Bank,* 12 Ill. 2d 40, 145 N.E.2d 65. Our previous discussion of the record and the trial court's findings illustrate that Glenview was thorough in its rezoning plan and considered the public's interest in preserving the Grove. Moreover, proof of reasonableness of a proposed use is an independent prerequisite for relief in a zoning case. See *Amalgamated*

---

[2]Plaintiffs also claim for the first time on appeal that ordinance No. 3078, which created the environmental review committee and its standards, is unconstitutionally vague. The issue is waived on appeal. See *Saunders v. Michigan Avenue National Bank,* 278 Ill. App. 3d 307, 662 N.E.2d 602 (1996).

*Trust & Savings Bank v. County of Cook*, 82 Ill. App. 3d 370, 402 N.E.2d 719 (1980). The record supports the trial court's conclusion that plaintiffs failed to prove that their proposed use was reasonable. Plaintiffs admitted that the size of the property was not large enough to accommodate ten one-acre lots unless Portage Run Road was included in the calculation of lot sizes. Furthermore, plaintiffs' plan would have harmed the area's wetlands.

 Finally, the record supports the trial court's conclusion that plaintiffs' unconstitutional taking and inverse condemnation claims failed. As we have discussed, plaintiffs did not prove that Glenview's R-E zoning ordinance deprived them of all economically viable uses for the property. See *St. Lucas Ass'n v. City of Chicago*, 212 Ill. App. 3d 817, 517 N.E.2d 865 (1991); see also *Westwood Forum, Inc. v. City of Springfield*, 261 Ill. App. 3d 911, 634 N.E.2d 1154 (1994).

In sum, we do not find that the trial court was clearly erroneous in its findings. The record showed that the ESA applied to the Zeitzes' property, that plaintiffs enjoyed no vested right in the R-1 zoning classification, that Glenview was not estopped from applying the R-E zoning ordinance to the property, that the R-E zoning ordinance was valid, and that plaintiffs' unconstitutional taking and inverse condemnation claims failed. In light of the foregoing, we affirm the judgment of the trial court.

Affirmed.

GALLAGHER and O'MARA FROSSARD, JJ., concur.