ROBERT SMITH, Plaintiff-Appellant, v. THE TOWN OF NORMAL *et al.*, Defendants-Appellees (Rand Veerman, Defendant).

Fourth District   No. 4—92—0430

Opinion filed December 23, 1992.

Frank Miles, of Hayes, Schneider, Hammer, Miles & Cox, of Bloomington, for appellant.

Wayne Karplus, Town Attorney, of Normal, for appellee Town of Normal.

J. Todd Greenburg and Hannah R. Eisner, both of City of Bloomington Legal Department, of Bloomington, for appellee Zoning Board of Appeals of Town of Normal.

Shelly Brenneman Carter, of Bloomington, for appellee Clinton Curtis.

JUSTICE McCULLOUGH delivered the opinion of the court:

The Zoning Board of Appeals of the Town of Normal (Board) sustained the determination made by the building commissioner of the Town of Normal (Commissioner) that the Town of Normal Zoning Code (Code) (Normal, Ill., Zoning Code ch. 15, §15.1—1 (1988)) required plaintiff Robert Smith (Smith) to change the lawful nonconforming use of his property from a rooming house to a single-family residence. Smith appeals, contending (1) the Board's interpretation of the Code was contrary to the manifest weight of the evidence; (2) the applicable nonconforming-use provisions of the Code (Normal, Ill., Zoning Code ch. 15, §15.3—2 (amended Aug. 20, 1990), §15.4—6 (amended Apr. 15, 1991)) are void for vagueness; and (3) the Code, as interpreted and applied by the Board, Commissioner and circuit court is unconstitutional because it bears no direct and substantial relationship to the protection or promotion of the public health, safety and welfare. We affirm.

Smith owns a seven-bedroom house in Normal, Illinois, which he purchased in 1979 for $37,000 or $38,000. He rents this house to eight students at a rate of $985 per semester per student, which generates an income of approximately $16,000 a year. He also rents the house during the summer for approximately $1,000 to $1,200. Smith valued his house at approximately $65,000, based on four times the gross income from the tenants.

Smith's house is located in an area zoned for single-family residences. However, section 15.3—2 of the Code states:

"A non-conforming use is any use of land, buildings or structures, which use is not permitted in the zoning district in which such use is located, but which use was permitted at the time such use was established." (Normal, Ill., Zoning Code ch. 15, §15.3—2 (amended Aug. 20, 1990).)

Section 15.4—6(D)(1) of the Code provides that if a lawful use of a structure existed at the time the Code became effective but that use would now be prohibited under the Code, that use may continue under certain circumstances. (Normal, Ill., Zoning Code ch. 15, §15.4—6(D)(1) (amended Apr. 15, 1991).) Prior to the enactment of the Code,

Smith's use of the structure as a rooming house was permitted. Upon the Code's enactment, the area was zoned for single-family residences, and Smith's use of the structure as a rooming house became a lawful nonconforming use.

On August 14, 1991, a fire of suspicious origin occurred at Smith's rooming house. The fire originated in the rear of the house where the north side of the rear deck joined to the exterior walls of the house. On the first floor of the house, there was flame damage to a three-foot-wide portion of the exterior wall extending the entire height of the first floor and there was flame damage to a portion of the first-floor kitchen ceiling. A "header joist" which extended through the kitchen between the first and second floors was flame damaged; however, it was not conclusively established that this header joist would need to be reinforced or replaced as a result of the fire. A three-foot-high "knee wall," which bears the load of the northernmost roof of the house, had flame damage. A portion of the load-bearing exterior wall on the east side of the house on the second floor directly south of the knee wall was flame damaged. A "shed roof" extending over the first-floor kitchen was damaged and a portion of the roof was damaged by firemen cutting a ventilation hole in the roof. The testimony before the Board indicated that as few as 5 or as many as 18 studs would either have to be replaced or strengthened by nailing new studs to the flame-damaged studs. Smith estimated the cost of repairs to the structure at $4,000. The Board made a finding of fact that the cost of repairs to the structure caused by the fire did not exceed 50% of the fair cash market value of the structure. Smith was issued a building permit to repair the damage caused by the fire.

On September 4, 1991, the Commissioner wrote Smith a letter stating that his structure could no longer be used as a rooming house. Smith was told that by operation of law, the property had reverted to use as a single-family residence only. The Commissioner concluded that the structure could no longer be used as a rooming house because the fire at Smith's property caused the need for replacement or reconstruction of the exterior bearing walls.

Smith filed a notice of appeal of that determination with the Board on September 11, 1991. On October 17, 1991, the Board held a hearing at which testimony was presented regarding the extent of the fire damage and the amount of work necessary to repair the building. The Board adopted its findings of fact on December 12, 1991, in which it concluded that the Commissioner properly interpreted the Code. The Board noted that Clinton Curtis, a defendant herein, owns

a house near Smith's property and testified that his property, a single-family residence, was valued at $17,000.

The Board made a specific finding that the first-floor exterior wall directly north of the rear entrance, the knee wall on the exterior of the second floor, and the exterior wall on the east side of the house on the second floor directly south of the knee wall are load-bearing walls, and that the header joist above the first-floor kitchen is a load-bearing component of the structure. The Board found that the Commissioner did not misunderstand the factual situation giving rise to the action from which the appeal was taken. Moreover, the Board found he did not misinterpret or erroneously apply the provisions of the Code in his ruling that the repairs to the load-bearing walls on Smith's property constituted reconstruction under the provisions of the Code and, therefore, Smith's property could no longer be used as a rooming house. One member of the Board disagreed and would overrule the Commissioner by finding that the proposed work to Smith's property constituted ordinary repairs under section 15.4—6(F) of the Code. Normal, Ill., Zoning Code ch. 15, §15.4—6(F) (amended Apr. 15, 1991).

Smith filed his complaint for administrative review of the Board's decision in the circuit court on January 8, 1992. The circuit court affirmed the Board's decision construing the Code. Defendant timely filed his notice of appeal.

Smith first contends the Board's decision sustaining the Commissioner's interpretation of the Code was against the manifest weight of the evidence. Specifically, Smith alleges section 15.4—6(D)(4), rather than section 15.4—6(D)(1) of the Code, applies in this situation. (Normal, Ill., Zoning Code ch. 15, §§15.4—6(D)(4), (D)(1) (amended Apr. 15, 1991).) Furthermore, Smith argues the proposed work on the building constitutes "repair of a structural element" rather than "reconstruction of a structure" and that this work is "ordinary repair" under the Code.

Generally, in construing municipal ordinances, the same rules are applied which govern construction of statutes. (*In re Application of County Collector* (1989), 132 Ill. 2d 64, 72, 547 N.E.2d 107, 110.) In construing a zoning ordinance, the intention of the drafters should be given effect by considering the common accepted usage of the words employed, the context in which they are employed, and the general structure of the ordinance. *Dixon v. City of Monticello* (1991), 223 Ill. App. 3d 549, 555, 585 N.E.2d 609, 614.

Because agencies can make informed judgments on the issues based upon their experience and expertise, it is generally recognized that courts will give substantial weight and deference to an interpretation of an ambiguous statute by the agency charged with the administration

and enforcement of the statute. (*Illinois Consolidated Telephone Co. v. Illinois Commerce Comm'n* (1983), 95 Ill. 2d 142, 152, 447 N.E.2d 295, 300.) A court may not overturn the decision of an administrative body unless the authority of the administrative body was exercised in an arbitrary or capricious manner or the decision is against the manifest weight of the evidence. (*Murdy v. Edgar* (1984), 103 Ill. 2d 384, 391, 469 N.E.2d 1085, 1088.) Court orders or administrative decisions may be upheld on any grounds required by the record, even though those grounds were not the ones which were the basis of the decision. *Rauschenberger v. Board of Education, Heritage Community Unit School District No. 8* (1991), 223 Ill. App. 3d 412, 416, 584 N.E.2d 1050, 1053-54.

Section 15.4—6 of the Code states:

> "[I]t is the intent of this Code to permit these non-conformities to continue until they are removed but not to encourage their survival under the terms of this Code. It is further the intent of this Code that non-conformities shall not be enlarged upon, expanded, or extended, nor be used as grounds for adding other structures or uses prohibited elsewhere in the same district, except as provided in subsection G." (Normal, Ill., Zoning Code ch. 15, §15.4—6 (amended Apr. 15, 1991).)

Thus, this intent must be kept in mind when construing and interpreting the various sections of the Code.

The Board concluded that section 15.4—6(D)(1) of the Code applied to this situation. That section provides:

> "(D) *Non-Conforming Uses of Structures.* If a lawful use involving individual structures with a fair cash market value cost of $1,000 or more, or of structure and land in combination, exists at the effective date of adoption of amendment of this Code that would not be allowed in the district under the terms of this Code, the lawful use may be continued as long as it remains otherwise lawful, subject to the following provisions:
>
> (1) No existing structure devoted to a use not permitted by this Code in the district in which it was located shall be enlarged, extended, constructed, reconstructed, moved, or structurally altered except in changing the use of the structure to a use permitted in the district in which it is located."

Normal, Ill., Zoning Code ch. 15, §15.4—6(D)(1) (amended Apr. 15, 1991).

On the other hand, Smith asserts that section 15.4—6(D)(4) of the Code applies in this situation. That section states:

"(4) Where non-conforming use status applies to a structure and premises in combination, removal or destruction of the structure shall eliminate the non-conforming status of the land. Destruction for the purpose of this subsection is defined as damage to an extent of more than fifty (50) percent of the fair cash market value at the time of destruction." Normal, Ill., Zoning Code ch. 15, §15.4—6(D)(4) (amended Apr. 15, 1991).

Smith contends his nonconforming use is that of "a structure and premises in combination." If that is true, he reasons, destruction sufficient to eliminate the nonconforming use of the structure has to be to an extent of more than 50% of the fair cash market value of the structure. The parties agreed that the damage to his house did not exceed 50% of the fair cash market value of the structure; hence, "destruction" sufficient to remove the right to operate the house in a nonconforming way has not occurred.

In support of his argument that section 15.4—6(D)(4) of the Code applies, Smith notes that the building is "permanently affixed to the ground" (Normal, Ill., Zoning Code ch. 15, §15.3—2 (amended Aug. 20, 1990)), which is indicative of use of land and structure together. Smith further points to the facts that the building permit which authorized the work to be done to remedy the fire damage contains the legal description of the property, the permanent identification number, and lot dimensions. Finally, Smith states he was required to improve a parking lot to continue the nonconforming use of the structure as a rooming house. He concludes all these things evidence the fact that his nonconforming use of the structure is that of a "structure and premises in combination."

The Town of Normal (Town) contends section 15.4—6(D)(4) of the Code is inapplicable to Smith's property. It alleges that that section affects the nonconforming use of land upon the destruction of a structure containing a nonconforming use. The Town asserts that if a store with the parking lot in the front yard in a residential district existed, the store would be a nonconforming use of a structure and the parking lot would be a nonconforming use of the land. If the store is destroyed (as defined by this section), the nonconforming use of the land (*i.e.*, the parking lot), must also cease.

■ The Town's interpretation of section 15.4—6(D)(4) of the Code is more persuasive. The fact that Smith's building permit contains a legal description and lot dimensions simply does not make his nonconforming use one of "structure and premises in combination." (Normal, Ill., Zoning Code ch. 15, §15.4—6(D)(4) (amended Apr. 15, 1991).) His use of the land is really only incidental to the nonconforming use of the structure.

To accept his argument, that, because the structure is permanently affixed to the ground the use of the structure is "a combination of premises and structure," would create absurd results; every structure is permanently affixed to the land and therefore section 15.4—6(D)(1) of the Code would be meaningless. The Board properly concluded that section 15.4—6(D)(1) of the Code applied rather than section 15.4—6(D)(4) of the Code.

Thus, we must determine whether the Board correctly concluded that the work Smith intends to do on the structure is prohibited by section 15.4—6(D)(1) of the Code so that he loses his right to continue to use the structure in a nonconforming manner. On appeal before the Board, the Town argued that what Smith proposed to do constituted "reconstruction" which is forbidden by this section. On appeal here, in addition, the Town alleges that this work amounts to "structural alteration," which is also prohibited by this section.

"Construction" is defined in the Code as "the act of adding an addition to an existing structure or the erection of a new principal or accessory structure on a lot." (Normal, Ill., Zoning Code ch. 15, §15.3—2 (amended Aug. 20, 1990).) Although not defined in the Code, "reconstruction" means "the action of reconstructing or state of being reconstructed," "something reassembled (as from parts) into its original form or appearance." (Webster's Third New International Dictionary 1898 (1986).) "Reconstruct" means "to construct again: *** to build again; *** to make over"; synonyms include rebuild, repair or reassemble. (Webster's Third New International Dictionary 1897 (1986).) "Structural Alteration" is defined in the Code as "any change, other than incidental repairs, which would prolong the life of the supporting members of a building, such as the addition, removal or alteration of bearing walls, columns, beams, girders or foundations." Normal, Ill., Zoning Code ch. 15, §15.3—2 (amended Aug. 20, 1990).

■ The work Smith proposes to do includes replacing or adding new studs to those which were flame damaged, repairing the kitchen ceiling joist and fixing the ventilation hole cut in the roof by the firemen. Specifically, he must replace or reinforce studs in load-bearing walls to continue the life of these walls. Without reinforcing the studs which were flame damaged, the existing walls cannot safely support the ceilings they are meant to support. Because what Smith intends to do will "prolong the life of the supporting members of a building," it is a structural alteration and he cannot do this work without losing his right to operate the structure in a nonconforming manner. Normal, Ill., Zoning Code ch. 15, §15.3—2 (amended Aug. 20, 1990).

Smith also asserts that this work constitutes "ordinary repair" which is allowed by the Code. Section 15.4—6(F) states:

"(F) *Repairs and Maintenance.* On any non-conforming structure or portion of a structure containing a non-conforming use, ordinary repairs, or repair or replacement of non-bearing walls, fixtures, wiring or plumbing may be made to an extent not exceeding fifty (50) percent of the fair cash market value of the non-conforming structure provided that the cubic content existing when it became non-conforming shall not be expanded." (Normal, Ill., Zoning Code ch. 15, §15.4—6(F) (amended Apr. 15, 1991).)

Smith contends he can make ordinary repairs which do not exceed 50% of the fair cash market value of the structure without losing his right to use the property in a nonconforming manner. The Town alleges he cannot do this work because (1) it is not ordinary repair; and (2) since the Code allows repair or replacement of nonbearing walls, it specifically prohibits replacement or repair of load-bearing walls. Since he intends to repair bearing walls, he cannot do the work without losing the right to continue the nonconforming use of the structure. The Town further asserts that ordinary repairs may not be made to bearing walls.

■ We need only address the Town's second assertion. Section 15.4—6(F) of the Code specifically allows repair of nonbearing walls. The allowance of repair or replacement to nonbearing walls excludes the repair or replacement of load-bearing walls. It is a fundamental principle of statutory construction that express mention of one thing in a statute excludes all other things not mentioned. *Welch v. Johnson* (1992), 147 Ill. 2d 40, 588 N.E.2d 1119.

"Repair" is defined in the Code as "any change that is not construction, removal or alteration. This would include a simple and minor mending to bring an element of a structure back to its original condition. It assumes that minimal expense and effort need be incurred to complete the repair." (Normal, Ill., Zoning Code ch. 15, §15.3—2 (amended Aug. 20, 1990).) Smith alleges that what he proposes to do will merely "bring an element of the structure back to its original condition" because adding the new studs will bring the load-bearing walls back to their prefire condition. He further notes that in 1988 he was allowed to remove studs from a load-bearing wall that is now flame damaged and insert a set of French doors. He asserts that this was "ordinary repair" which he was allowed to make. He claims that since he previously made a change in a load-bearing wall without losing the right to continue the nonconforming use of the structure, the Town is now estopped from prohibiting this work.

The Town argues that it is not estopped because it allowed Smith to do work on a load-bearing wall in 1988. The Town further alleges the work proposed here is not "ordinary" and is more than "simple and minor mending." The Town asserts that the work will require more than the minimal expense and effort to complete the repairs and that he can only repair or replace nonbearing walls.

Section 15.4—6(F) of the Code does not allow Smith to do this work without losing his right to operate the structure in a nonconforming manner. Smith proposes to do work on bearing walls. Since the work is to be done on bearing walls, it cannot be characterized as ordinary repair. Further, although what he proposes to do may constitute "repair," as that term is defined in the Code, it is not authorized by this section as it involves bearing walls. This interpretation is in accordance with the intent of the Code to allow the continuation of nonconforming uses but not to encourage their survival. The repair or replacement of a bearing wall would encourage the survival of a structure.

■ Finally, Smith's contention that because the Town allowed him previously to remove studs from a bearing wall and replace a window with French doors, it is now estopped from allowing these changes is without merit. As the Town notes, the work done in 1988 by Smith constituted an "Alteration," defined in the Code as "any change in size, shape or character of a building or structure or change in the use thereof." (Normal, Ill., Zoning Code ch. 15, §15.3—2 (amended Aug. 20, 1990).) The work done in 1988 was merely a change in the character of the building and did not do anything to prolong or encourage the life of the structure. Rather, it merely enhanced or changed the character of the building by removing a window and adding a set of French doors. On the other hand, the work proposed by Smith here does not alter the character of the building but specifically is designed to prolong the life of the structure.

■ In conclusion, the Board's decision was not against the manifest weight of the evidence. The proposed work constitutes "Structural Alteration" prohibited by the Code. (Normal, Ill., Zoning Code ch. 15, §15.3—2 (amended Aug. 20, 1990).) The proposed work cannot be characterized as "ordinary repairs" or "repair or replacement of non-bearing walls" because it involves work on bearing walls and thus is not permitted by section 15.4—6(F) of the Code. (Normal, Ill., Zoning Code ch. 15, §15.4—6(F) (amended Apr. 15, 1991).) Therefore, because the work is not allowed by the Code, Smith loses the right to the lawful nonconforming use of the structure as a rooming house.

Next, Smith contends the "applicable nonconforming use provisions" of the Code are void for vagueness. Smith alleges that reasonable

people can only guess at what the Code permits or prohibits when a fire causes some damage to a bearing wall and a structure operating a nonconforming use.

A zoning ordinance is presumed valid, and the burden is upon the party attacking the ordinance to establish its invalidity by clear and convincing evidence. (*Harris Trust & Savings Bank v. Duggan* (1983), 95 Ill. 2d 516, 531, 449 N.E.2d 69, 76.) An ordinance is unconstitutionally vague when persons of common intelligence must necessarily guess at its meaning. In other words, the ordinary person must be capable of appreciating, from the language of the ordinance or statute, how he will be affected by its operation. (*Broadrick v. Oklahoma* (1973), 413 U.S. 601, 37 L. Ed. 2d 830, 93 S. Ct. 2908; *Union National Bank & Trust Co. v. Village of New Lenox* (1987), 152 Ill. App. 3d 919, 922, 505 N.E.2d 1, 3.) An ordinance is void if it is indefinite and uncertain and its precise meaning cannot be ascertained. (*Hahnenkamp v. Madison County* (1989), 183 Ill. App. 3d 76, 85, 538 N.E.2d 1204, 1210.) If there is a doubt as to the construction to be given to a particular provision in an ordinance, the doubt must be resolved in favor of an interpretation which supports the ordinance. *Lakin v. City of Peoria* (1984), 129 Ill. App. 3d 651, 656, 472 N.E.2d 1233, 1237.

■ Neither section 15.4—6(D)(1) nor 15.4—6(F) of the Code is unconstitutionally vague. Section 15.4—6(D)(1) of the Code lists the type of work prohibited on structures containing a nonconforming use. That section provides that a structure devoted to a nonconforming use cannot be "enlarged, extended, constructed, reconstructed, moved, or structurally altered." (Normal, Ill., Zoning Code ch. 15, §15.4—6(D)(1) (amended Apr. 15, 1991).) Of those prohibited activities, "Construct[ed]," "Removal" and "Structurally Altered" are specifically defined in the Code. (Normal, Ill., Zoning Code ch. 15, §15.3—2 (amended Aug. 20, 1990).) The remaining words are common and are capable of being understood by persons of common intelligence. The gist of this section, when read with the provisions regarding the intent of the Code to not allow any work that will prolong the life of nonconforming structures, is capable of being understood by persons of common intelligence.

Likewise, section 15.4—6(F) of the Code is equally clear. That section allows for ordinary repairs or repair or replacement to nonbearing walls, fixtures, wiring or plumbing, provided that these repairs do not exceed 50% of the fair cash market value of the structure and do not expand the cubic content of the structure. "Repair" is defined in the Code and examples are given. "Replace" is a common word capable of being understood by persons of ordinary intelligence. Again, this section is not vague when read in conjunction with the section regarding the

purpose of the Code. Repairs that are in the usual course of events, *i.e.*, a leaky faucet or broken window, can be made for the comfort and safety of the tenants. Similarly, repairs to the wiring or plumbing or nonbearing walls (*i.e.*, elements of the structure that are not necessary to the continued existence of the structure) are allowed. This carries out the intent of the Code to allow the continuation of these structures but not encourage their survival. Repairs necessary to an extent of more than 50% of the fair cash market value of the house or to the walls necessary to the survival of the structure permit more than the continuation of the structure; such repairs would encourage the survival of the structure. The drafters of the Code intended that if a structure becomes dilapidated such that repairs exceeding 50% of the fair cash market value are necessary, the nonconforming use should cease.

Therefore, neither section 15.4—6(D)(1) nor section 15.4—6(F) of the Code is void for vagueness. Both are capable of being understood by persons of common intelligence.

Finally, Smith contends the Code is unconstitutional as applied to his property because it bears no direct and substantial relationship to the protection of the public health, safety and welfare. The Town contends the Code is rationally related to the public health, safety and welfare. This relationship is found in the applicable Code provisions regarding the intent of the Code, "to foster the use and development of land in an orderly manner ***. *** [T]o regulate and manage land use in order to implement sound comprehensive planning policies, and to protect individual land owners and general neighborhoods from incompatible and detrimental land uses." Normal, Ill., Zoning Code ch. 15, §15.2—1 (1988).

A nonconforming use is a property right of which the owner cannot be unreasonably and arbitrarily deprived. (*County of Cook v. Renaissance Arcade & Bookstore* (1988), 122 Ill. 2d 123, 141, 522 N.E.2d 73, 80.) Enacting a zoning ordinance is a legislative function, and once a legislative body has enacted legislation in response to a need to protect and promote the general welfare of its citizens, there is a presumption that the enactment is a valid exercise of police power. The zoning ordinance must not only bear a reasonable relationship to the protected public interest, but the means utilized must also be a reasonable method for accomplishing the objective. (*Suhadolnik v. City of Springfield* (1989), 184 Ill. App. 3d 155, 164-65, 540 N.E.2d 895, 900.) Even though the right to a nonconforming use is a property right, a governmental body may restrict a nonconforming use as may be necessary for the public health, comfort, safety or welfare. (*Furlong v. City of Chicago* (1986), 142 Ill. App. 3d 347, 350, 491 N.E.2d 1301, 1303.) The one challenging

the ordinance bears the burden of demonstrating its invalidity. (*Tomasek v. City of Des Plaines* (1976), 64 Ill. 2d 172, 179-80, 354 N.E.2d 899, 903.) A zoning ordinance may be valid in general, but invalid as to a particular piece of property. *Suhadolnik*, 184 Ill. App. 3d at 165, 540 N.E.2d at 901.

The elimination of nonconforming uses is a legitimate goal. (*Gilmore v. County of Du Page* (1991), 209 Ill. App. 3d 66, 71, 567 N.E.2d 1111, 1115.) The Code specifically states the drafters intended to allow the continuation of nonconforming uses of these structures but not to encourage their survival. The evidence indicated Smith's rooming house is located in a residential district which consists mainly of elderly, long-time residents. There were allegations presented to the Board that the tenants of Smith's house were loud, disruptive and possibly selling drugs from the house. The Code also has the stated intent of protecting general neighborhoods from incompatible and detrimental land uses. This neighborhood is zoned for single-family residences and a rooming house holding eight students is certainly incompatible with that type of neighborhood. The restrictions on the type of work that can be done on structures containing a lawful nonconforming use advance the intent of the Code to gradually eliminate these nonconforming uses. By prohibiting certain kinds of improvements on structures containing nonconforming uses, as those structures age and become in need of these types of work, the need for the extensive repair will effectuate the elimination of the nonconforming use.

Thus, prohibiting certain types of repair or extensive repair on structures devoted to a nonconforming use is a reasonable method for eliminating such nonconforming uses over time. The elimination of these nonconforming uses bears a rational relationship to the public interest in protecting landowners in general neighborhoods from incompatible and detrimental land use. Thus, these sections of the Code are not unconstitutional as applied to Smith's property.

For the foregoing reasons, the Board's decision was not against the manifest weight of the evidence.

Affirmed.

COOK and GREEN, JJ., concur.