THE VILLAGE OF PLAINFIELD, Plaintiff-Appellant, v. AMERICAN CEDAR DESIGNS, INC., Defendant-Appellee.

Third District    No. 3—99—0305

Opinion filed September 12, 2000.—Modified opinion filed November 20, 2000.

KOEHLER, J., concurring in part and dissenting in part.

Michael R. Lucas (argued), of McKeown Law Office, of Joliet, for appellant.

Michael J. Morrisroe (argued) and C. Kent Frederick, both of Morrisroe & Krafcisin, of Bloomingdale, for appellee.

JUSTICE HOMER delivered the opinion of the court:

The Village of Plainfield (village) filed a four-count complaint against American Cedar Designs (American), alleging that American was in violation of certain village ordinances. The trial court found the evidence insufficient on all but one count of the complaint, and the village appealed. We must determine whether the trial court erred in: (1) finding that American's use of its property did not violate the flood control ordinance as alleged in count I, because it was a permitted nonconforming prior use; (2) finding American's use of the property did not violate the zoning ordinance as alleged in count II, because it was a legal nonconforming use; (3) finding the evidence was insufficient to determine the extent to which American had expanded the storage use of its property as alleged in count II; (4) barring the village engineer's opinion testimony; and (5) denying the village's motion to amend its complaint. After our careful review, we affirm in part and reverse in part.

## FACTS

The property at issue is an 11-acre parcel located in the village within the regulatory floodway of the Du Page River. At all times relevant, the property was zoned for single-family residential use. Over the years, however, the property had been utilized for nonresidential uses, including, during some period prior to 1981, the operation of a roller-skating rink in the "carousel building" located on the property.

From 1981 until 1989, the property was leased by Robert Bumber, who operated a pallet-making business. His company constructed

wooden pallets in the carousel building and stored raw materials on the east and south sides of the building. He ceased using the property by April 30, 1989.

American purchased the property for its cedar fence manufacturing operation on May 9, 1990. Thomas Keefe, the vice-president of American, testified that he first saw the property a year before the purchase and believed it to be a lumber yard. He inquired about the property's zoning status in early 1990. At that time, Peter Waldock was the village planner. Waldock told Keefe that, although the property was zoned residential, American would be permitted to continue the industrial/manufacturing use within the confines of the building or enclosed from view off the premises. Keefe testified that after American purchased the property, it began manufacturing fencing in the carousel building and storing the product outside the building.

A tornado destroyed the carousel building in August 1990. At that time, the village informed American that the Federal Emergency Management Agency (FEMA) flood plain maps and village flood control ordinances prohibited American from reconstructing the building, but that American could apply to the village for rezoning and to FEMA for a map amendment. American did neither.

Instead, American requested a permit from the Illinois Department of Transportation (IDOT) to build a small storage shed and sunscreen structure on the property. IDOT granted the permit on the conditions that: (1) American remove the shed within two years from the permit date, (2) the sunscreen structure be built without walls, and (3) the structure be uninhabitable. The permit required American to remove the shed on or before March 28, 1991, but American did not do so. American continued its fence-building operations on the property in the open, storing its raw materials and fence panels in the open as well.

In July 1996, substantial rainstorms flooded the Du Page River. Bundles of American's fencing, ranging in size from four feet by five feet to five feet by eight feet and weighing up to 500 pounds each, floated off the property and as far as five miles downriver. Four bundles floated into the village's sewer treatment facility property and some bundles may have floated onto property across the river from American.

Thereafter, Waldock, who had become the village's development and zoning director, notified American that its property use violated the village's flood control and zoning ordinances. The village advised American that all materials stored within the floodway had to be removed within 90 days after receipt of the notice. Because of American's failure to comply with repeated requests for compliance,

the village filed its four-count complaint against American in November 1997.

In count I, the village alleged that American violated section 2.2—7 of the flood control ordinance (Code of Ordinances of the Village of Plainfield ch. 2, § 2.7—7 (June 17, 1991)), by placing and storing fence-making materials and motor vehicles within the designated floodway of the Du Page River.

In count II, the village asserted that American violated section 3 of ordinance 674, which prohibits the establishment or expansion of "open storage of building materials and equipment" in residential districts. Code of Ordinances of the Village of Plainfield No. 674, § 3 (March 18, 1968). The village contended that American violated this provision by storing material and equipment in the open and conducting manufacturing activities without a building enclosure.

Count III contained allegations that American violated section 9 of ordinance 674, which prohibits the expansion of nonconforming land uses. Code of Ordinances of the Village of Plainfield No. 674, § 9 (March 18, 1968). The village asserted that American expanded its nonconforming industrial use by increasing its open storage of materials and equipment and expanding its manufacturing activities without enclosure by building.

Finally, the village alleged in count IV that American's activities constituted a nuisance under the village ordinances. Code of Ordinances of the Village of Plainfield ch. 6, §§ 6—97, 6—98.

The matter proceeded to a bench trial. After hearing the evidence, the trial judge found insufficient evidence to demonstrate the violations alleged in counts I, II, and IV of the complaint, but ruled in the village's favor on count III.

Regarding counts I and II, the trial judge determined that the industrial/manufacturing use was "grandfathered in" as a legal nonconforming prior use of the property. With respect to the expansion of its storage use as alleged in count II, the trial judge concluded that, from the evidence, he could not determine whether or to what extent American had expanded its open storage of building materials and equipment on the property. Therefore, the trial judge ruled in favor of American on counts I and II.

Regarding the expansion of the manufacturing activities alleged in count III, however, the trial court concluded that American had expanded its manufacturing use. The trial court determined that manufacturing in the open was not "grandfathered in" as a prior nonconforming use; therefore, American violated ordinance 674, section 9, by manufacturing its fences outdoors. American was fined $2,000 for this violation.

The village subsequently filed a motion to amend the complaint to conform to the proofs (735 ILCS 5/2—616 (West 1998)). Specifically, the village sought to amend count I to allege that the violation began May 15, 1990, rather than July 18, 1997, and to amend counts II and III to reflect a violation of the zoning ordinance in effect at the time of the violation rather than at the time of the purchase of the property. The trial judge denied the motion, and the village appeals.

## ANALYSIS

I. Ordinance Violations

■ Although a village's enforcement of an ordinance is quasi-criminal in nature, it is tried and reviewed as a civil proceeding. *Village of Kildeer v. LaRocco*, 237 Ill. App. 3d 208, 211, 603 N.E.2d 141, 143 (1992). In such cases, the village has the burden of proving a violation of an ordinance by a clear preponderance of the evidence. *City of Peoria v. Heim*, 229 Ill. App. 3d 1016, 1017, 594 N.E.2d 778, 780 (1992).

■ On review, a trial court's factual determinations regarding such violations will not be reversed unless they are contrary to the manifest weight of the evidence. *County of Kankakee v. Anthony*, 304 Ill. App. 3d 1040, 1048, 710 N.E.2d 1242, 1248 (1999). However, this court need not defer to the decisions of the trial court on questions of law, such as the interpretation of an ordinance. *Monahan v. Village of Hinsdale*, 210 Ill. App. 3d 985, 993, 569 N.E.2d 1182, 1188 (1991). When faced with an issue presenting a mixed question of law and fact, we must consider the matter according to the clearly erroneous standard of review. *Zeitz v. Village of Glenview*, 304 Ill. App. 3d 586, 592, 710 N.E.2d 849, 854 (1999).

A. Section 2.7—7 of the flood control ordinance (count I)

The village contends that the trial court erred, as a matter of law, in concluding that American's manufacturing and storage uses of the property were "grandfathered in" as permitted nonconforming uses under section 2.7—7 of the flood control ordinance. The village asserts that American's activity was not an "appropriate use" as defined in section 2.7—7(c). Furthermore, because section 2.7—7 makes no express exception for prior nonconforming uses, the village maintains that American must be strictly held to the restrictions set forth in the provision. The village explains that it is obligated to prohibit American's improper use of its property in order to maintain eligibility for the national flood insurance program, minimize losses and conform to state regulation of floodways.

Section 2.7—7(c) provides that the only developments[1] in a floodway that will be allowed are "appropriate uses" as defined in that provision and the relevant provisions of the Illinois Administrative Code. See Code of Ordinances of the Village of Plainfield ch. 2, § 2.7—7(c) (June 17, 1991); 92 Ill. Adm. Code § 708.70 (1994) (recodified at 17 Ill. Adm. Code § 3708.70 (1999)). It is undisputed that American's use of its property does not conform to the requirements of section 2.7—7 since the storage of materials does not fall within the definition of an "appropriate use." Therefore, we must determine whether American's use is a legal nonconforming use.

■ ■ A legal nonconforming use is a nonpermitted use of property under currently applicable zoning ordinances which predates the applicable zoning ordinance and is legalized on that basis. *Littlejohn v. City of North Chicago*, 259 Ill. App. 3d 713, 720, 631 N.E.2d 358, 364 (1994). A municipality may enact reasonable regulations to restrict any extension or expansion of a nonconforming use. *Cities Service Oil Co. v. Village of Oak Brook*, 15 Ill. App. 3d 424, 428, 304 N.E.2d 460, 463 (1973). However, an ordinance is invalid if it unreasonably or arbitrarily deprives a landowner of his property right to a nonconforming use. *Smith v. Town of Normal*, 238 Ill. App. 3d 944, 956, 605 N.E.2d 727, 735 (1992). Because zoning ordinances are presumed valid, any doubts as to the construction of a particular provision in an ordinance must be resolved in favor of an interpretation that supports its validity. *Smith*, 238 Ill. App. 3d at 955, 605 N.E.2d at 735-35.

■ There is no express language in section 2.7—7 prohibiting or permitting the continuation of a prior nonconforming use. However, a plain reading of section 2.7—7 indicates that its application is prospective because it only applies to "*proposed* development, redevelopment, site modification, or building modification within a regulatory floodway." (Emphasis added.) Code of Ordinances of the Village of Plainfield, ch. 2, § 2.7—7 (June 17, 1991). American's property use was not a proposed development because the prior owner had used the property for manufacturing and stored materials outdoors since 1981. The village was fully aware of this. In fact, Waldock testified that, before American purchased the property, he told American that "the previous industrial occupant would set the model for their use of the prop-

---

[1]The flood ordinance defines "development" as "any manmade change to real estate including *** storage of materials *** [and] *** any other activity of man that might change the direction, height or velocity of flood or surface waters." Code of Ordinances of the Village of Plainfield ch. 2, § 2.7—2. The village's prior ordinance contained the same language. Code of Ordinances of the Village of Plainfield No. 1039, ch. 7, § 3 (November 1, 1982).

erty." It was only after the 1996 flood that the village determined that American's use violated the ordinance.

After our careful review, we determine that section 2.7—7 of the flood control ordinance applies prospectively; consequently, the provision did not prohibit the continuation of the prior nonconforming use when American purchased the property. Therefore, we affirm the trial court's ruling on count I of the complaint.

B. Nonconforming use under zoning ordinance 674 (count II)

The village also argues that the trial court erred in finding that American's manufacturing and storage uses of the property did not violate zoning ordinance 674 because they were "grandfathered in" as legal nonconforming uses of the property.

Section 3 of ordinance 674 provides, in pertinent part, that in residential districts "no trade, business or industrial use or any of the following activities or uses shall hereafter be established or expanded: (1) open storage of building material and equipment." Code of Ordinances of the Village of Plainfield No. 674, § 3 (March 18, 1968). However, section 9 provides:

"Any use, building or structure lawfully existing on the effective date of this Ordinance, or at the time of an amendment hereto, or heretofore permitted or authorized which does not conform to the provisions of said ordinance, or amendment, shall be known as nonconforming. Such use, building or structure *** shall not be *** expanded, re-established if discontinued for one year or more, or rebuilt and continued in case of destruction to the extent of fifty (50%) percent or more." Code of Ordinances of the Village of Plainfield No. 674, § 9 (March 18, 1968).

The village contends that when American purchased the property in May 1990, the prior manufacturing use had been discontinued for over a year. Therefore, American was prohibited from reestablishing it. After our careful review, we disagree.

To constitute abandonment of a legal nonconforming use, it must appear that there is an intent to abandon the use and the mere cessation of the use will not, *per se*, result in a loss of the right to resume such a use. See *McCoy v. City of Knoxville*, 41 Ill. App. 2d 378, 383, 190 N.E.2d 622, 624-25 (1963). There must be evidence of voluntary conduct carrying the implication that the owner intended to abandon the use. See *McCoy*, 41 Ill. App. 2d at 384-85, 190 N.E.2d at 625-26. The facts of a particular case determine whether an owner is entitled to the protection of a legal nonconforming use. *County of Du Page v. Elmhurst-Chicago Stone Co.*, 18 Ill. 2d 479, 484, 165 N.E.2d 310, 313 (1960).

■ After our careful review of the record, we determine that there had been no abandonment or discontinuance of the prior legal nonconforming use when American commenced its operation in 1990. Although Bumber's pallet company had ceased operations by April 1989, just over a year prior to American's start-up, Bumber did not own the property and neither party presented any evidence of the owner's intent or actions other than his sale of the property to American. We have only the fact that the owner sold the property to another industrial user, American, and that American began its use barely one year after Bumber left the property.

However, evidence was presented showing that American sought to purchase this property based upon its understanding of the prior industrial use and that the village knew of American's intent to continue that use. Keefe, American's vice-president, investigated the property's zoning status in early 1990. At that time, Waldock acknowledged the prior industrial/manufacturing use was a legal nonconforming use of the property and told Keefe that American would be permitted to continue that use.

Moreover, after the 1990 tornado, IDOT issued a permit for construction of a shelter so that American could continue operating its fence-building business. The record shows that, even at that time, the village and American understood that the nonconforming use would continue and we discern no indication of abandonment of use.

We determine that the trial court's finding that American's manufacturing use of the property was permissible as a legal nonconforming use was supported by the record. Therefore, we affirm the trial court's ruling on that portion of count II of the complaint.

C. Expansion of the storage use under ordinance 674 (count II)

The village argues that the trial court erred in determining that there was insufficient evidence to determine whether American had expanded its use of the property for the open storage of building materials and equipment in violation of section 3 of ordinance 674, as alleged in count II of the complaint.

As previously stated, section 3 of ordinance 674 provides that the "open storage of building material and equipment" may not be "established or *expanded*" in a residential district. (Emphasis added.) Village of Plainfield Zoning Ordinances No. 674, § 3 (March 18, 1968). In denying the village relief regarding the alleged expansion of the storage use, the trial court concluded:

"How much of the property was expanded or not expanded, the Court really cannot make that determination. You know, they have ongoing business. There's exhibits that show when they bought it,

and prior to that, there were large stacks of lumber. And I imagine there were some days where there was a lot of lumber and some days maybe there was not so much lumber. But I'm not in a position to say that the use changed and what guidelines to follow."

■ After reviewing the record, we hold the trial court's finding to be contrary to the manifest weight of the evidence. During his testimony, Bumber illustrated the limited scope of his outdoor storage when he operated his pallet-making business on the property. He stated that he only stored raw materials on the east and south side perimeters of the carousel building and kept all pallets within the building. He acknowledged that he also stored some semi-trailers for his trucking business on the property. Keefe testified that he recalled that Bumber's outside storage was more expansive and that American's use was consistent with that prior use. However, Alan Persons, the village's superintendent of public works, testified that he had seen an increase in storage over the years that American had been using the property.

Most significantly, the aerial photographs taken in 1990, 1992, and 1995 illustrate the progressive expansion of the storage of materials on the property in question. The photographs show that, after the carousel building was destroyed by the tornado, American's open storage of building materials significantly expanded well beyond the boundaries of the prior use.

Based upon the foregoing, we conclude that the trial court's determination that the village failed to prove American had expanded its open storage of materials and equipment on the property as alleged in count II was contrary to the manifest weight of the evidence. Therefore, we reverse that portion of the trial court's ruling and remand the cause for a determination of the appropriate relief for the violation alleged in count II of the complaint.

## II. Evidentiary Rulings

### A. Barring Hamilton's opinion testimony

The village argues that the trial court erred in barring Hamilton from giving opinion testimony. The village asserts that Hamilton, who has been an engineer for 11 years and serves as vice-president of the Will County storm water management committee, was well qualified to give his opinion about the effect of debris backup on floodwaters.

■ Expert testimony is admissible if it assists the trier of fact in understanding the evidence or deciding a fact in issue and the witness is qualified by reason of knowledge, skill, experience, education or training to give said testimony. *Yates v. Chicago National League Ball*

*Club, Inc.*, 230 Ill. App. 3d 472, 484, 595 N.E.2d 570, 579 (1992). Decisions regarding the admissibility of evidence and the sufficiency of the qualifications of an expert rest within the sound discretion of the trial court. *Yates*, 230 Ill. App. 3d at 484, 595 N.E.2d at 579; *Sobczak v. Flaska*, 302 Ill. App. 3d 916, 929, 706 N.E.2d 990, 1001 (1998). Such decisions will not be reversed on appeal unless an abuse of discretion has occurred.

▮ Our review of the record reveals that the trial judge refused to allow the testimony, not because Hamilton lacked technical expertise, but because he was asked to testify to something that he did not witness. Hamilton testified that he observed the property after the flood, not at the time of the flood. As an offer of proof, Hamilton further testified that debris could cause floodwater to back up. The trial court had to decide whether the village had "grandfathered in" American's use under the flood ordinance and whether American had expanded its use. Even if, as we believe, Hamilton was qualified to testify to the effects of debris on floodwaters, we conclude that his testimony would not have helped the trial court in understanding the flood control ordinance or in deciding whether American had expanded its use.

Consequently, we determine that the trial court did not abuse its discretion when it ruled that Hamilton could not testify as to his opinion on the effect that the floating debris could have on the floodwaters.

B. Denial of the village's motion to amend its complaint

The village contends that the trial court erred in denying its motion to amend its complaint to conform the pleading to the proofs. The village sought to change the dates of the offense alleged in the complaint to reflect the evidence adduced at trial and to amend the zoning ordinance cited in counts II and III to reflect the current versions. The village asserts that the "gravamen" of the charges would have remained unchanged.

▮ Section 2—616(a) of the Code of Civil Procedure authorizes the amendment of pleadings at any time before final judgment on just and reasonable terms. 735 ILCS 5/2—616(a) (West 1998). A trial court's ruling on a motion for leave to amend a complaint is discretionary, and such determinations will not be overturned on appeal absent an abuse of discretion. *Barille v. Sears Roebuck & Co.*, 289 Ill. App. 3d 171, 179, 682 N.E.2d 118, 124 (1997).

Courts should consider the following factors in determining whether a trial court has abused its discretion in ruling on an amendment to a complaint: (1) whether the proposed amendment would cure a defective pleading, (2) whether the other parties would sustain prej-

udice or surprise by virtue of the proposed amendment, (3) whether the proposed amendment is timely, and (4) whether previous opportunities to amend the pleading could be identified. *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273, 586 N.E.2d 1211, 1215-216 (1992).

In this case, the proposed amendment was not presented to cure a defective pleading. In fact, in denying the motion, the trial court elicited from the village its acknowledgment that the amendments would not have impacted the trial court's ruling. Further, the village stated in its brief that it did not ask for an increase in penalties in the event that the amendment to the pleadings were granted. In short, the village has offered no justification for the amendment other than the contention that these facts were adduced at trial.

It is apparent, however, that the facts alleged in the motion to amend the complaint were known to the village at the time it filed its original complaint, but the village presented no valid reason for its failure to include them at that time. See *Lawson v. Hill*, 77 Ill. App. 3d 835, 845, 396 N.E.2d 617, 625 (1979). Moreover, the village could have presented the motion during trial or at the conclusion of trial, but the village chose not to do so until after the court had made its ruling.

Under the circumstances, we are unable to determine that the trial court abused its discretion in denying the village's motion to amend its complaint. Therefore, we affirm the trial court's denial of the motion.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Will County is affirmed in part and reversed in part, and the cause is remanded for further proceedings consistent with this decision.

*Affirmed in part and reversed in part; cause remanded.*

BRESLIN, J., concurs.

JUSTICE KOEHLER, specially concurring in part and dissenting in part:

I concur in the majority's conclusions that, in the particular circumstances of this case, neither Plainfield's zoning ordinance nor its flood control ordinance prohibited American's use of its property for manufacturing and storage purposes as a continuation of a prior nonconforming use. However, I dissent from that portion of the opinion that reverses the circuit court's finding that, from the evi-

dence presented, it could not determine the extent to which American expanded its use of the property.

The village has the burden of proving an ordinance violation by clear and convincing evidence. *City of Peoria v. Heim*, 229 Ill. App. 3d 1016, 1017, 594 N.E.2d 778, 780 (1992). The circuit court's findings on questions of fact will not be reversed unless against the manifest weight of the evidence. *Pioneer Trust & Savings Bank v. County of Cook*, 71 Ill. 2d 510, 516-17, 377 N.E.2d 21, 24 (1978). Clear and convincing evidence has been defined as "the quantum of proof that leaves no reasonable doubt in the mind of the fact finder as to the truth of the proposition in question." *Bazydlo v. Volant*, 164 Ill. 2d 207, 213, 647 N.E.2d 273, 276 (1995). It is more than a preponderance but not quite the degree of proof necessary to convict a person of a criminal offense. *Bazydlo*, 164 Ill. 2d at 213, 647 N.E.2d at 276. A reviewing court should not reverse the trial court's findings merely because it disagrees with the fact finder or would have reached a different conclusion. *Bazydlo*, 164 Ill. 2d at 214, 647 N.E.2d at 276. The trier of fact is in a position superior to that of the reviewing court to observe the witnesses while testifying, judge their credibility, and determine the weight it should give to the testimony. *Bazydlo*, 164 Ill. 2d at 214-15, 647 N.E.2d at 276-77. "A judgment is against the manifest weight of the evidence only when an opposite conclusion is apparent or when findings appear to be unreasonable, arbitrary, or not based on evidence. [Citations.]" *Bazydlo*, 164 Ill. 2d at 214, 647 N.E.2d at 277.

The record contains photographs of the property that the village maintains show that American progressively put its outdoor property to more extensive use. However, the record also contains testimony that American's business was cyclical. Further, the witnesses gave conflicting testimony regarding the extent of American's use. The circuit court had the opportunity to observe and judge the credibility of the witnesses. In addition to noting the cyclical nature of the business and the lack of guidelines presented by the village for determining whether American's use had expanded, in his ruling from the bench, the trial judge noted that there appeared to be some other reason that the village wanted American off the property and had gone along with American's use of the property. I would conclude that, where photographs of the property depict business activity on American's property but the business involved is cyclical and there is conflicting testimony regarding the property's use, the village did not present clear and convincing evidence of the extent of American's expansion; therefore, the circuit court's decision that it could not determine the extent of American's expansion was not against the manifest weight of the evidence.