No. 2—10—0169
Opinion filed January 28, 2011

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE VILLAGE OF RICHMOND, | ) | Appeal from the Circuit Court |
| | ) | of McHenry County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 08—TR—65533 |
| | ) | |
| GARY E. MAGEE, | ) | Honorable |
| | ) | Charles P. Weech, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE ZENOFF delivered the judgment of the court, with opinion.
Justices Burke and Schostok concurred in the judgment and opinion.

**OPINION**

Plaintiff, the Village of Richmond, charged defendant, Gary E. Magee, with driving an overweight vehicle. Richmond Village Code §15.01(a) (amended Nov. 16, 2006). After a bench trial, the trial court entered a judgment for defendant. Plaintiff appeals. We reverse and remand.

Plaintiff alleged by complaint that, on October 20, 2008, defendant operated a second-division motor vehicle with a gross weight of 17,000 pounds, although its maximum permitted weight was only 6,000 pounds. The ordinance under which defendant was charged adopted the Illinois Vehicle Code, including section 3—401(d) of the statute (625 ILCS 5/3—401(d) (West 2008)).

At trial, plaintiff first called Mark Andrews, an Illinois State Police officer. On direct examination, he testified as follows. He was a truck weight inspector and a certified truck enforcement officer. On Thursdays and Fridays, he worked at the Richmond scale on Route 12. When he was not there, some other State Police officers had access to the scale house, but Richmond officers did not. The scale stood directly in front of the building. Andrews identified photographs, later admitted into evidence, of the scale house and the scale. The photographs showed that inside the scale house was a digital display with a printer.

Andrews explained the operation of the Richmond scale and similar scales. Before each truck is weighed, the display must read zero. After each weighing, the display must be returned to zero. Trucks are weighed axle by axle. The scale does not need to be "zeroed out" after each axle is weighed, but only before the first axle is weighed and after the last one is weighed.

Andrews testified that the Richmond scale was certified, meaning that the Department of Agriculture (DOA) had tested it and found it fit for operation. A decal so signifying was affixed to the display and could not be removed without being damaged. The scale had been certified annually.

Andrews identified and described several documents that were later admitted into evidence. Plaintiff's exhibit No. 10 stated the results of tests performed on the Richmond scale on January 8, 2008, by David Biggs, a DOA inspector. Plaintiff's exhibit No. 11 stated the results of tests that Biggs performed on the scale on January 6, 2009. Plaintiff's exhibit No. 12 was a cover sheet, prepared August 22, 2008, and signed by John Harris of Fairbanks Service (Fairbanks), the scale's manufacturer. The cover sheet stated that, on that day, a new display and a new attached printer had been installed. Plaintiff's exhibit No. 13, also signed by Harris, stated that, on October 7, 2008, maintenance, inspection, and testing had been performed on the scale. Plaintiff's exhibit No. 14, also

signed by Harris, showed "the actual numbers" that he recorded during the test. Plaintiff's exhibit No. 15, dated August 22, 2008, and signed by Harris, was an "in-service report" for the scale.

Andrews testified that, on October 20, 2008, there were "actually two stickers on the display." One was from Fairbanks, showing the last date that it had tested and calibrated the scale. The other was from the DOA, showing that the scale was certified.

Andrews testified on cross-examination as follows. He was not aware of any written policy for "how to perform a test at the scale house." However, he "believe[d]" that the operator's manual, which was kept at the scale house, set out a procedure. Asked whether the scale needed to be recertified and recalibrated "every time that [it was] worked on," Andrews responded, "It would depend on the work, I think, that's done to the scale." Asked whether "Handbook 44" states that a scale must be recertified after every use and every time maintenance has been done, Andrews said that he was "not familiar with the Handbook 44 procedures." Shown plaintiff's exhibit No. 10, Andrews agreed that nobody had signed it or acknowledged receiving it.

Andrews testified as follows on redirect examination. To his knowledge, the Illinois State Police had no written procedure for operating the Richmond scale; this was what he had tried to say on cross-examination. He did not adhere to Handbook 44. "Calibration" is done by the maintenance contractor, here Fairbanks, and means making needed adjustments. "Certification" is performed by the DOA and means that it has approved the scale for operation. On August 22, 2008, a new digital display and a new printer were installed, but no repair work was needed or performed. On October 7, 2008, regular quarterly maintenance was performed, but, to Andrews' knowledge, no other work was done. Plaintiff's exhibit No. 14 showed the results of the test that Harris had done that day.

Anna Kuzmiak, a Richmond police officer and a certified truck enforcement officer, testified as follows. On October 20, 2008, she was on patrol, driving north on Route 12, when she saw in

front of her a pickup truck with a trailer. The maximum permissible weight for the truck and trailer combined was 6,000 pounds. (Defendant stipulated to this fact.) Kuzmiak stopped the vehicle, spoke to the driver, defendant, and then weighed the vehicle on the Richmond scale. She had been trained to operate the scale and had used it more than 30 times.

Kuzmiak explained that, before weighing a vehicle, the operator makes sure that the scale is "zeroed out." She did so before weighing defendant's vehicle. The scale's display had a sticker, also known as a "decal" or "decalmania." The sticker meant that the DOA had certified the scale. The sticker was dated January 2008. According to Kuzmiak, a certification is good for 12 months. Kuzmiak saw no sign of tampering with the decal or of any outside interference that could have impeded the scale's accuracy. Because she had zeroed out the scale and the DOA sticker was in place, Kuzmiak believed, both then and at trial, that the scale was functioning properly on October 20, 2008.

Kuzmiak recounted that she weighed the front and back of the truck, then the trailer. After each weighing, she wrote down the result on her notepad. Kuzmiak could not get a printout, because the scale house was locked. In her truck enforcement class, she had been taught that a printout is not needed. The result for the first axle was 3,300 pounds; for the second axle, 4,120 pounds; and for the trailer, 9,580 pounds. Thus, the gross weight was 17,000 pounds.

Plaintiff rested. Defendant testified about the stop and the weighing. He stated that Kuzmiak issued him a citation but no other documents, such as a printout from the scale.

After hearing arguments, the trial judge stated as follows. The "real issue" was whether plaintiff proved the weight of defendant's vehicle on October 20, 2008. The judge continued:

> "The entire procedure that Richmond uses is appalling to this Court. It's been appalling to this Court for years. The fact that we have got a scale house that is locked, that

they have no access to it in any way, shape, or form. They can't even get a ticket printout because they're not entitled to access to the building.

And *** I certainly believe what the officer sees is evidence. *** The fact [that] there was no ticket though does lend greatly as to [*sic*] the credibility of the evidence presented.

I think the most crucial witness [is] *** Andrews. He is trained with the Illinois State Police. He has been there for eight and a half years. He was the struck [*sic*] weight inspector, and he went through a whole litany of procedures in which [*sic*] they use, and during his testimony he made it very clear *** that indeed this scale was certified. It was certified on January 8th of 2008.

However, the certification was never signed. Just because there is a sticker on the side of the scale doesn't mean that it's accurate. The certification for whatever reason was never signed by the proper authority. There was—

On cross[-]examination, there was [*sic*] questions asked of this witness about Illinois State procedures and whether they met—and whether they met the requirements of Handbook 44, whether they adhered to those, and he testified no, he doesn't. No, the State Police did not.

Does [*sic*] the Illinois State Police have a procedure in [*sic*] how to operate the scale in Richmond? Not that I'm aware of. That was the question. That was the answer. It puts in great question, I guess, the validity of the scale.

The biggest issue with this scale to me—Even if I accepted [that] it was a properly and accurately working scale, the biggest question as to its certification to me has to do with the amount of repairs that were done to the scale.

I recall the testimony. *** There was a new display installed on August 22nd of 2008. It was not recertified and not recalibrated. There was no evidence presented at any time that it was recalibrated or recertified.

On 10-7 of '08, there was a [*sic*] quarterly maintenance done. That was the only evidence I received."

The judge continued that "once anybody tampers with the machine, it has to be recertified or recalibrated, or *** it goes to the validity of the machine. It goes to the weight in which [*sic*] Court [*sic*] is willing to give that evidence." Later, he added:

"I have no ticket, no printout, no nothing, to verify [that] on this particular day this was the specific weight of the vehicle. That is an element which the Village must prove.

Just because there is a sticker on the side of the scale doesn't mean it's accurate. The evidence presented I think clearly reflects that this scale was not an accurate or calibrated scale."

The judge held that plaintiff had not met its burden of proof. After the trial court entered judgment for defendant, plaintiff timely appealed.

Defendant has not filed a brief. However, we may reach the merits even without an appellee's brief. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

Plaintiff contends that the judgment is against the manifest weight of the evidence. Plaintiff also contends that the judgment is based in part on mistakes of law. To the extent that this appeal involves issues of law, our review is *de novo*. See *Village of Plainfield v. American Cedar Designs, Inc.*, 316 Ill. App. 3d 130, 135 (2000). However, in deciding whether plaintiff ultimately proved its case by a preponderance of the evidence (see *Village of Kildeer v. LaRocco*, 237 Ill. App. 3d 208, 211

(1992)), we may reverse the judgment only if it is against the manifest weight of the evidence (see *Village of Plainfield*, 316 Ill. App. 3d at 135).

We first note an apparent error of law that might have improperly influenced the judgment. The trial judge expressed concern that Andrews admitted that he did not follow Handbook 44, formally known as the National Institute of Standards and Technology Handbook 44. However, by statute, "Law enforcement is exempt from the requirements of commercial weighing established in NIST handbook 44." 625 ILCS 5/15—112(a) (West 2008). Thus, the judge's concern was misplaced, and the testimony about Handbook 44 cannot support the judgment.

We turn to the trial court's factual findings, focusing on the trial judge's explanation, which we quoted in detail. We agree with plaintiff that the first paragraph is of no moment: whether the procedures used at the Richmond scale house over the years are offensive to the judge (or to anyone else) has no bearing on whether defendant violated plaintiff's ordinance.

What matters is the evidence and the inferences to be drawn from it. The trial judge conceded that Kuzmiak weighed defendant's vehicle and recorded the result and that, according to what she wrote down, the vehicle weighed 17,000 pounds. This was 11,000 pounds over the 6,000-pound maximum. Yet, although the judge conceded that "what the officer sees is evidence," he did not find that evidence persuasive. Apparently, there were two reasons: (1) the lack of written corroboration; and (2) the judge's doubt that the scale had been functioning properly. Neither misgiving was valid.

The judge's comment, "The fact that there was no ticket *** does lend greatly as to [*sic*] the credibility of the evidence presented," was not well founded. Kuzmiak testified that she weighed the vehicle, that its gross weight was 17,000 pounds, and that she promptly wrote down the figures that produced this result. This testimony was not contradicted, inherently improbable, or impeached; the judge thus was not free to refuse to credit it. See *Anderson v. Zamir*, 402 Ill. App. 3d 362, 367

(2010). On this record, the lack of a printout did not render Kuzmiak's testimony inherently improbable. Kuzmiak testified that she was taught in her enforcement class that a printout was not needed. Moreover, as the judge noted, the interior of the scale house was inaccessible to Kuzmiak, so her failure to issue a printout hardly casts doubt on her credibility.

We conclude that the judgment cannot be upheld by any inference that the scale did not say that defendant's vehicle had a gross weight of 17,000 pounds. We therefore turn to the other perceived deficiency: that plaintiff had not proved that the scale was reliable. We hold that the trial court's finding on this matter is against the manifest weight of the evidence.

Plaintiff produced uncontradicted and unimpeached evidence that, on October 20, 2008, the scale had a DOA sticker that was dated January 2008 and was valid for a year. Kuzmiak testified that she saw no sign that the decal had been tampered with or that any interference had impeded the accuracy of the scale; that she "zeroed out" the scale after starting and finishing the weighing; and that, in her opinion, on October 20, 2008, the scale had been working properly.

Under long-standing case law, the presence of the DOA sticker, combined with Kuzmiak's testimony, established a *prima facie* case that defendant's vehicle was overweight. In *LaRocco*, the enforcement officer testified that he weighed the defendant's truck in accordance with established procedures, that the scale "zeroed out" and was working accurately, and that the scale had the required DOA sticker. We held that this testimony established a *prima facie* case of a weight violation. *LaRocco*, 237 Ill. App. 3d at 213. In *People v. Fair*, 61 Ill. App. 2d 360 (1965), the enforcement officer testified that the scale had a current DOA certification decal and that he zeroed out the scale before weighing each axle of the defendant's truck. The appellate court held that this evidence made a *prima facie* case that the scale had been accurate. *Fair*, 61 Ill. App. 2d at 365-66.

Here, as in *LaRocco* and *Fair*, the enforcement officer's testimony established a *prima facie* case that the scale was accurate. Therefore, the trial judge's second reason for denying plaintiff relief is invalid, unless something allowed a finding that the *prima facie* case had been rebutted. The trial judge's comments suggest several possibilities, but none is supported by the evidence.

First, the judge commented that the Illinois State Police did not "have a procedure" for operating the scale and that this fact "put[] in great question *** the validity of the scale." However, as plaintiff argues, this comment is based on Andrews' statement that, to his knowledge, the State Police had no *written* procedure for operating the scale. In any event, Kuzmiak, a Richmond police officer, testified that she had been trained to operate the scale, had done so many times, and had followed a procedure similar to that approved in *LaRocco* and *Fair*. We cannot see how this evidence casts doubt on the accuracy of the scale.

Second, the judge noted that, although there was evidence that the DOA had certified the scale in January 2008, this evidence was negated by the fact that plaintiff's exhibit No. 10, the DOA report of January 8, 2008, was unsigned. However, the report was not the primary evidence that the scale had been certified; more important was the certification decal. There was testimony that the decal was affixed to the scale, showed no signs of tampering, and that the scale had been officially certified. The trial judge accepted this testimony. We cannot conceive of how the decal had become affixed to the scale unless the DOA had tested the scale and found it to be in good order. The comment, "Just because there is a sticker on the side of the scale doesn't mean it's accurate," is not helpful. The presence of the sticker showed that the DOA had found that, as of January 8, 2008, the scale was accurate. At the very least, this was part of the evidence upon which plaintiff based its *prima facie* case. That the report was unsigned is odd, but unimportant in view of the decisive evidence that the DOA had certified the scale on January 8, 2008. Moreover, plaintiff's exhibit No. 11 was a signed

DOA report from January 9, 2009, which was after the incident, indicating that the scale was still certified and that a decal was affixed.

The third possible reason for finding that plaintiff's *prima facie* case had been rebutted was the work performed on August 22, 2008. The trial judge explained that there was no evidence that, after the display and printer were installed, the scale was "recertified or recalibrated that day." This observation is partly inaccurate and partly beside the point. As plaintiff points out, plaintiff's exhibit No. 15 states that Fairbanks' employee, Harris, performed "increasing load & shift tests" that all resulted in "0" error. Also, after the line, "Describe any adjustments made," Harris wrote, "Installed new indicator. Programmed & *calibrated*." (Emphasis added.) The report directly refutes the judge's statement that the scale was not calibrated. (Also, the scale was not actually *repaired*; there is no evidence that anything had been wrong with the parts that were not replaced.) The scale was not recertified immediately after the installation work, but there was no evidence that recertification was needed; Kuzmiak testified that DOA certification was good for a year and that, when she weighed defendant's vehicle, she was satisfied that the scale was working properly.

The fourth possible danger to plaintiff's *prima facie* case was the work done on October 7, 2008. However, the evidence shows that this danger was illusory. According to plaintiff's exhibit No. 13, Harris performed "maintenance, *inspection and testing*" of the scale. (Emphasis added.) In plaintiff's exhibit No. 14, Harris recorded the results of a "Shift Test" and a "Load Test—Known Weights." In each box marked "error," he wrote "0." Thus, the report showed that, on October 7, 2008, the scale was inspected and tested for accuracy and found wholly satisfactory. Andrews testified that the October 7, 2008, work was routine maintenance only and that the scale did not need to be recalibrated every time that work was done on it. Thus, any inference that the October 7, 2008, work put the accuracy of the scale into doubt is against the manifest weight of the evidence.

In sum, nothing refuted plaintiff's *prima facie* case that the scale was accurate and reliable when Kuzmiak weighed defendant's vehicle and found that it exceeded its legal limit by 11,000 pounds. To the extent that the evidence beyond what was needed to establish the *prima facie* case proved anything, it affirmatively showed that the scale was accurate. Moreover, as plaintiff observes, there is much support in the case authority for disregarding any possible inaccuracies, even had there been better evidence of them. In *Fair*, the appellate court noted that the defendant's truck weighed 18,980 pounds more than the 72,000-pound limit, leaving a 26% margin of error. The court held that this fact vitiated the defendant's challenge to the scale's accuracy. *Fair*, 61 Ill. App. 2d at 366. In *People v. Hansen*, 74 Ill. App. 2d 49 (1966), the defendant's truck weighed approximately 30% more than the maximum. The court stated that this large margin made the defendant's challenges to the scale's accuracy "seem hypercritical and frivolous." *Hansen*, 74 Ill. App. 2d at 52. In *People v. Jackson*, 98 Ill. App. 3d 418, 422 (1981), the appellate court applied *Hansen*'s disparaging comment to the defendants' challenge to a scale that showed that their trucks were, respectively, approximately 27½% and 34% overweight. Here, defendant's truck exceeded the 6,000-pound limit by 11,000 pounds, or 183%. The margins of error in *Fair*, *Hansen*, and *Jackson* were sufficient to neutralize any objections to the accuracy of the scales in those cases. *A fortiori*, the margin here means that nebulous defects in the weighing process could not mean denying plaintiff any recovery. The judgment is thus against the manifest weight of the evidence (and the manifest evidence of the weight).

Plaintiff asks us to reverse the judgment, find that defendant violated plaintiff's ordinance, and remand the cause for a hearing on the proper penalty. We grant that request. Plaintiff also requests us to order that, on remand, the cause be assigned to a different judge. We deny that request. Although we may order a cause assigned to a new judge on remand, the party seeking the reassignment must overcome the presumption of judicial impartiality. *Eychaner v. Gross*, 202 Ill. 2d

228, 280 (2002). Plaintiff merely asserts that the trial judge's "prejudicial [*sic*] statements" demonstrate the need for reassignment. We conclude that plaintiff has not shown that the judge cannot be impartial.

For the foregoing reasons, we reverse the judgment of the circuit court of McHenry County, find for plaintiff on liability (see Ill. S. Ct. R. 366(a)(5) (eff. Feb. 1, 1994)), and remand the cause for a hearing on the proper penalty and the imposition of the penalty.

Reversed and remanded.